**David Glen MEYERS, et al.,
Plaintiffs-Appellants,**

v.

**CONTRA COSTA COUNTY DEPARTMENT OF SOCIAL SERVICES, et al., Defendants-Appellees.**

**No. 85–2127.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1986.

Decided March 16, 1987.

Vaughn E. Spunaugle, Richmond, Cal., for plaintiffs-appellants.

Jeffrey G. Nevin, Law Offices of Jerrold M. Ladar, San Francisco, Cal., and Thomas A. Watrous, Martinez, Cal., for defendants-appellees.

Before SCHROEDER, CANBY and BOOCHEVER, Circuit Judges.

SCHROEDER, Circuit Judge:

In this appeal we must decide whether a social service worker performing duties related to the filing of child custody and abuse proceedings has absolute prosecutorial immunity. We must also decide whether principles of quasi-judicial immunity apply to court employees participating under court directives in the resolution of family disputes.

The plaintiffs are David Meyers, his children and his parents. They brought this civil rights action under 42 U.S.C. § 1983 against David's former wife Amy, and numerous individual and governmental defendants. They claimed that the defendants conspired, under color of state law and without due process of law, to prevent the adult plaintiffs from associating with the minor plaintiffs in deprivation of a liberty interest. The district court dismissed as to all defendants. The plaintiffs appeal only the dismissals as to appellees Haaland, a social worker, Allison and Crossley, employees of the Family Conciliation Court, and the Contra Costa County Department of Social Services (DSS). We hold, first, that Haaland was entitled to absolute prosecutorial immunity for all of his actions except those which preceded the institution of judicial proceedings and as to those actions, qualified immunity applies; second, that Allison and Crossley were entitled to

quasi-judicial immunity for their actions; and, third that the plaintiffs never demonstrated that the acts complained of were pursuant to a policy or practice of the DSS. We affirm the district court in all respects.

*Haaland*

Haaland was a social casework specialist employed by the DSS in its Children's Protective Services Unit. Among his numerous responsibilities were the initiation and pursuit of dependency petitions in cases of suspected child neglect and abuse. His alleged conduct about which plaintiffs complain in this appeal was directly related to those functions.

Plaintiffs claim that, beginning on October 9, 1981, Haaland conspired with Amy Meyers to deprive David Meyers of custody of their children. According to the complaint, after being told by Amy that David had molested their son Paul, Haaland embarked on a course of conduct designed to separate Paul from his family by supervising an investigation and filing verified dependency petitions with the juvenile court of the Contra Costa County Superior Court requesting that the minor children be declared dependents of the juvenile court and removed from the custody of their father.

In this appeal plaintiffs place particular emphasis on the allegation that on October 23, 1981, Haaland ordered David to stay away from his home until after a judicial hearing could take place on October 26, although Haaland knew that the police department had terminated its investigation for lack of evidence. At the October 26 hearing, Haaland stated that he would arrange for supervised visitation between David and his children. According to the complaint, Haaland permitted David only one opportunity to visit with his children between the date the petition was filed, October 26, and the date it was dismissed pursuant to Haaland's recommendation, November 17.

The complaint also states that in a January 19, 1982 custody hearing, Haaland, in furtherance of his conspiracy with Amy to deprive David of custody, testified to his conclusion that David had molested Paul. Haaland's role appears to have ceased at this point. David was eventually reunited with his children when a superior court awarded him custody on January 23, 1984.

All of Haaland's challenged actions except for the January 1982 testimony took place within a short period of time—between October 9, 1981, and November 17, 1981. All revolve around Haaland's initiation of dependency proceedings against David. They include his instructions to David before proceedings were instituted to stay away from the children until custody had been resolved, and his subsequent testimony against David in the dependency proceedings. The district court held that Haaland was entitled to absolute immunity for these actions. We agree as to all except actions which were taken before the institution of judicial proceedings.

It is beyond question that Haaland is entitled to absolute immunity for the testimony he gave during the dependency proceedings and the custody hearing because witnesses, including government witnesses, are immune from liability for their testimony. *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

■ Haaland should be accorded prosecutorial immunity for his role in the initiation of dependency proceedings against Meyers. The Supreme Court has held that prosecutorial immunity derives from a need for the exercise of independent judgment in the conduct of public duties. *Imbler v. Pachtman*, 424 U.S. 409, 423, 96 S.Ct. 984, 991, 47 L.Ed.2d 128 (1976). Prosecutorial immunity is absolute, rather than qualified, in order to permit prosecutors to perform their duties without fear of even the threat of section 1983 litigation. If the prosecutor were only qualifiedly immune,

> the threat of § 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential

liability in a suit for damages.... Further, if the prosecutor could be made to answer in court each time ... a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law.

. ... Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

*Id.* at 424–26, 96 S.Ct. at 992–93; *see also Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894,. 2913, 57 L.Ed.2d 895 (1978) ("[a]bsolute immunity is ... necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation").

■ Although child services workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make. a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit. We therefore hold that social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings. Such a holding is consistent with the holdings of other courts.. *See, e.g., Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984); *Pepper v. Alexander,* 599 F.Supp. 523, 526–27 (D.N.M.1984); *Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1098–99 (W.D.N.Y.1983).

■ We do not agree, however, that all of Haaland's alleged conduct falls within the scope of quasi-prosecutorial activities. On October 23, Haaland allegedly ordered Meyers to stay away. from his' home until after the hearing before the juvenile court. At that time, Haaland had not yet initiated dependency proceedings. Haaland is not entitled to absolute immunity for this act.

In *Ashelman v. Pope,* 793 F.2d 1072 (9th Cir.1986) (en banc), we examined the contours of both judicial and prosecutorial immunity. We stated:

Prosecutorial immunity has developed along much the same lines as judicial immunity. Immunity extends to protect a prosecutor who acts within his or her authority and in a quasi-judicial capacity.... Where a prosecutor acts as an advocate "in initiating the prosecution and in presenting the state's case," absolute immunity applies.

*Id.* at 1076 (quoting *Imbler,* 424 U.S. at 431, 96 S.Ct. at 995). Haaland's ordering of Meyers away from his home can be characterized neither as advocatory or quasi-judicial. Haaland's action did not aid him in the preparation or presentation of his case to the juvenile court. *Compare Walden v. Wishengrad,* 745 F.2d 149 (2d Cir.1984) (absolute immunity for social services attorney who requested warrant to insure testimony of witnesses). Rather than contributing to an informed judgment by an impartial decisionmaker as an advocate, Haaland acted unilaterally prior to the operation of the judicial process. We do not suggest that Haaland's alleged action was necessarily improper; it was merely not that of an advocate.

Furthermore, the policy considerations that support quasi-judicial immunity do not apply to Haaland's action. In *Sellars v. Procunier,* 641 F.2d 1295 (9th Cir.), *cert. denied,* 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981), we considered the justification for the doctrine of quasi-judicial immunity. After examining the benefits of absolute immunity for certain decisionmakers, we stated:

Nevertheless, the balance might not be struck in favor of absolute immunity were it not for the presence of safeguards built into the judicial process that tend to reduce the need for private damage actions as a means of controlling unconstitutional conduct.

*Id.* at 1300. We then quoted a portion of the following passage from *Butz.*

The cluster of immunities protecting the various participants in judge-supervised trials stems from the characteristics of the judicial process rather than its location....

... [T]he safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct. The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges.... Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process, there is a less pressing need for individual suits to correct constitutional error.

438 U.S. at 512, 98 S.Ct. at 2913–14.

Haaland's alleged decision to order Meyers away from his house was made in the absence of such "safeguards built into the judicial process." Haaland himself was not subject to the checks operating on judicial decisionmakers, nor was his decision part of or ancillary to pending judicial proceedings supervised by a judge.

Although absolute freedom from the threat of unfounded lawsuits is an ideal condition for decisionmaking, such freedom is the rare exception to the rule. *See id.* at 508, 98 S.Ct. at 2911–12. We conclude that, like the decisions of other officials acting in a non-judicial role, it is the qualified immunity standard which must govern Haaland's immunity defense for the alleged action of ordering Meyers from his house. *See Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct.

2727, 73 L.Ed.2d 396 (1982). *See also Duchesne v. Sugarman,* 566 F.2d 817 (2d Cir. 1977) (applying qualified immunity doctrine to conduct of social worker when no court proceedings had been filed). Haaland's decision to order Meyers away from his house is sufficiently protected by that doctrine.

In *Duchesne,* the social worker actually took custody of the children, instituted no court proceedings, and for many months refused the parent's demands for a hearing. 566 F.2d at 822–24. The Second Circuit held that the parent's rights had been violated and that triable issues were raised as to the applicability of the qualified immunity defense. *Id.* at 833. We have found no cases similar to this one, however, in which the social worker acted promptly to institute proceedings after unilaterally attempting to influence a parent-child relationship. Under the doctrine of qualified immunity, executive officers are shielded from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Under California law, social workers are given broad general authority to protect and promote the welfare of all children; to prevent or remedy problems which may result in the neglect or abuse of children. Cal.Welf. & Inst. Code § 16501 (West Supp.1987). The relevant pre–1982 section provided that a "child protective services program ... shall take such actions as are considered necessary to protect the child and correct the situation...." Cal.Welf. & Inst.Code § 16501 (West 1980). Haaland's conduct on October 23, which indisputably involved no physical interference with parental custody, cannot be said to have violated clearly established statutory or constitutional rights.

*Allison and Crossley*

■ Crossley is a "supervising counselor" and Allison is an "associate counselor" of the Family Conciliation Court. Their positions were created by the Family Conciliation Court Act and they are employees of the court. Their duties, as described by Cal.Civ.Proc.Code § 1744, encompass medi-

ation of custody and visitation disputes, investigating matters pertaining to such disputes, and providing reports to the courts.

During the fall of 1977, the parents, Amy and David Meyers, together with the paternal grandparents, participated in a series of voluntary counseling sessions conducted by Allison under the auspices of the Family Conciliation Court. The adult plaintiffs allege that during these sessions Allison became biased against them. They further allege that at some point during the latter half of 1981, but before October 8, 1981, Amy made allegations of child abuse to Allison who willfully failed to discuss them with David or to otherwise investigate them. The complaint alleges that on November 16, 1981, David and Amy attended a mandatory conciliation session with a counselor from the Family Conciliation Court, and that upon learning of the session, Allison induced Crossley to reassign the case to her in spite of her bias against David.

The complaint further alleges that from November 19, 1981, through January 21, 1982, Allison refused to arrange for visitation between David and his children in willful violation of a court order requiring her to arrange such visits. The complaint continues that on or about April 7, 1982, Crossley and Allison visited the foster parents in whose care the court had placed the children and attempted to induce them to refuse David and his parents the right to see the children.

The district court held that Allison and Crossley, as officers of the court, were entitled to quasi-judicial immunity. We have granted quasi-judicial immunity to various officers of the court. *See, e.g., Sharma v. Stevas,* 790 F.2d 1486, 1486 (9th Cir.1986) (clerk of the United States Supreme Court); *Demoran v. Witt,* 781 F.2d 155, 158 (9th Cir.1985) (probation officers); *Sellars,* 641 F.2d at 1303 (parole officers).

Based on these precedents, we agree with the district court that as officers of the court Allison and Crossley have absolute immunity in the performance of duties authorized by the statute. Although the plaintiffs allege that certain actions taken by Allison and Crossley constituted violations of court orders, absolute immunity is lost only if these actions were "clearly and completely outside the scope of [Allison's and Crossley's] jurisdiction." *Demoran,* 781 F.2d at 158. Their actions were not outside that scope.

Allison and Crossley were performing a judicial function at the direction of a court. The controversy involved a pending case to which they had been assigned, and the events at issue arose directly and immediately out of a confrontation between the defendants and parties in that case. The allegations that Allison and Crossley refused to allow David visitation rights and attempted to bias the foster parents are not materially different from the allegation that a judge and prosecutor conspired to deprive a prisoner of effective counsel and access to legal materials. In *Ashelman,* we held the latter allegation insufficient to overcome judicial and prosecutorial immunity. 793 F.2d at 1078.

*The County Department of Social Services*

■ The district court held that the plaintiffs had made an insufficient showing that the acts complained of in this case were pursuant to an established policy or practice as required by *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). We agree with the district court that

> a close reading of the first count of the complaint indicates that it is not the policies themselves that are alleged to give rise to the constitutional deprivations of which plaintiffs complain. Rather, the complaint states that various unauthorized actions were committed by the named defendants in furtherance of an alleged conspiracy to deprive plaintiffs of custody of the children.

Because municipalities are not liable for the unauthorized activities of their employees, the district court correctly dismissed the claim as to DSS.

Affirmed.

BOOCHEVER, Circuit Judge, dissenting in part:

I believe that the Meyers have stated sufficient allegations of deprivation of statutory and constitutional parental rights by alleging that Haaland ordered David Meyers to stay away from his home. I would remand for resolution of the factual issues involved in a qualified immunity defense.