884 F.2d 133
 58 USLW 2149
 Gloria VOSBURG; Eva Marie Vosburg, Plaintiffs-Appellants,
v.
DEPARTMENT OF SOCIAL SERVICES; Christina Robertson; Billie
Jo Powell; Linda Russell; Virginia Burks,
Defendants-Appellees,
Vocal Virginia, Inc., Amicus Curiae.
 No. 88-2632.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 10, 1989.
Decided Aug. 29, 1989.
 
 John M. DiJoseph (Sattler & DiJoseph, on brief), Arlington, Va., for plaintiffs-appellants.
 Kathleen P. O'Brien, Falls Church, Va., (Carolyn S. Motes, Motes, Fite & O'Brien, on brief), McLean, Va., for defendants-appellees.
 (Vocal-Virginia, on brief), for amicus curiae.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 ERVIN, Chief Judge:
 
 
 1
 Gloria Vosburg appeals from the district court's grant of summary judgment against her on the Sec. 1983 action she brought on behalf of her daughter, Eva Vosburg, and herself against the Virginia Department of Social Services and four state social workers. Finding that the state social workers are absolutely immune from liability arising from their role in filing a removal petition, we affirm the decision of the district court.
 
 I.
 
 2
 The circumstances which gave rise to the instant lawsuit arose out of a dispute concerning the visitation rights of Eva's father. As a result of Ms. Vosburg's violation of several court orders entered with respect to that dispute, defendant-appellee Christina Robertson, an employee of the Amherst County, Virginia Department of Social Services ("DSS"), filed a petition for a Preliminary Removal Order. This petition was filed in the juvenile court of Amherst County pursuant to Virginia Code Sec. 16.1-252.[1] Specifically, the social workers' decision to file the removal petition resulted from the following actions of Ms. Vosburg: (1) her refusal to cooperate with the social workers to provide visitation with Eva's father, despite a court order to do so; (2) her taking Eva out of the jurisdiction on December 3, 1987, and failing to keep the social workers informed of the child's location; (3) her failure to appear at a December 21, 1987 hearing, in violation of another court order. In the removal petition the social workers alleged that Ms. Vosburg lacked "child management skills," and that she was refusing to cooperate with them. In their depositions the workers testified that they never believed Eva was in "imminent danger" of any kind, and that they do not believe Ms. Vosburg is an "unfit parent."
 
 
 3
 At a hearing held the same day that the petition was filed, the juvenile court entered the Preliminary Removal Order authorizing the appropriate law enforcement agency to seize the child and turn her over to the Amherst County Department of Social Services.
 
 
 4
 On January 4, 1988, Eva was removed from a relative's home by an officer of the Manassas City Police Department and custody was transferred to DSS. A hearing was held January 6, at which time appellant requested and received a continuance so she could retain her own attorney.
 
 
 5
 Also on January 6, the child was placed in foster care and the mother was permitted one hour of visitation per week at the DSS office. During the first mother-child meeting, defendant Billie Jo Powell, who was supervising the visit, heard Ms. Vosburg ask Eva, "Did anybody hurt you?" Fearing that this line of questioning might upset the child, Powell asked appellant not to pursue the issue. Later on, in response to Eva's request to go home with her mother, Ms. Vosburg told her daughter, "These mean people won't let you!" Powell cautioned plaintiff against making statements which would tend to upset or alarm Eva, while at the same time reassuring appellant that these guidelines did not mean she could not ask her daughter how she was. On February 26, 1988 the mother's visitation was temporarily suspended because Ms. Vosburg was continuing to make remarks that the social workers felt were upsetting Eva.
 
 
 6
 Ms. Vosburg regained physical custody of her child on May 8, 1988 in accordance with a consent order dated February 17, 1988 which provided that custody be returned to plaintiff when indicated by the DSS approved counselor.
 
 
 7
 After regaining custody of Eva, Ms. Vosburg filed the current Sec. 1983 action on behalf of Eva and herself in the United States District Court for the Eastern District of Virginia. The suit named as defendants the Amherst County Department of Social Services, and social workers Robertson, Powell, Russell and Burks. Ms. Vosburg alleged that by acting to remove Eva from her custody, the defendants violated her constitutional rights to parental autonomy, to free association with her child, and to free speech. She also alleged that the conduct in question constituted false imprisonment of Eva, in violation of the child's fourth amendment rights.
 
 
 8
 The district court granted summary judgment in favor of the social workers and the DSS after finding that the workers were absolutely immune from liability resulting from their conduct in preparing and filing the removal petition, as well as their conduct in caring for Eva once the court had awarded custody of the child to DSS. Judge Hilton reasoned that in filing the petition, the social workers were functioning as prosecutors, and that under the Supreme Court's decisions in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), they were entitled to absolute prosecutorial immunity. The district court also held that once Eva was in the custody of DSS pursuant to the removal order, the appellees were acting as officers of the court, and were entitled to absolute quasi-judicial immunity for their supervision of the child.
 
 II.
 
 9
 The Vosburgs contest only that part of the district court's decision that found the social workers absolutely immune with respect to their conduct in preparing and filing the removal petition.[2] They argue that the function of a social worker in this situation is more analogous to that of a police officer than that of a prosecutor. Therefore, they claim, under the Supreme Court's decision in Malley v. Briggs, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the appellees are entitled to only a qualified, good faith immunity.
 
 
 10
 We find, however, that in filing the Removal Petition the social workers were acting in a prosecutorial, rather than an investigative or "policing" capacity. Under Imbler and Butz, therefore, these state agents must be afforded absolute immunity from any liability arising from this conduct.
 
 
 11
 Imbler held that prosecutors are absolutely immune from Sec. 1983 actions for conduct occurring within the scope of their duties in initiating and pursuing a criminal prosecution. In making this determination the court first reviewed the considerations underlying the grant of absolute immunity traditionally afforded prosecutors under the common law, and concluded that "the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under Sec. 1983." 424 U.S. at 424, 96 S.Ct. at 992, 47 L.Ed.2d at 140. Those public policy considerations included the fact that a prosecutor is "duty bound" to exercise his best judgment in deciding which suits to bring and in prosecuting them in court. "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages." Id. The court speculated that such suits would not be infrequent, as defendants would likely channel their resentment at being prosecuted "into the ascription of improper and malicious actions to the State's advocate." 424 U.S. at 425, 96 S.Ct. at 992, 47 L.Ed.2d at 140.
 
 
 12
 Imbler also noted that "the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive and administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivations." Id. Because the accurate functioning of the criminal justice system requires that all advocates be afforded wide discretion in the conduct of the trial and the presentation of evidence, that accuracy could be adversely affected if prosecutors were afforded only qualified immunity. A prosecutor might well be reluctant to proceed with a case where there existed sharply conflicting evidence because "an acquittal likely would trigger a suit against him for damages." 424 U.S. at 426 n. 24, 96 S.Ct. at 993, n. 24, 47 L.Ed.2d at 141, n. 24.
 
 
 13
 Finally, the Supreme Court found that "[t]he ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to Sec. 1983 liability." 424 U.S. at 427, 96 S.Ct. 993, 47 L.Ed.2d at 141. The focus of judges during appellate review and post conviction relief hearings potentially could be blurred by the knowledge "that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment." Id. Furthermore, the court observed, the possibility of personal liability could well dampen the prosecutor's exercise of his ethical duty "to bring to the attention of the court or of the proper officials [any newly discovered] evidence suggestive of innocence or mitigation, once he obtains his conviction." Id. at n. 25.
 
 
 14
 In Butz the Supreme Court extended absolute immunity to all federal officials whose "special functions required a full exemption from liability." 438 U.S. at 508, 98 S.Ct. at 2911, 57 L.Ed.2d at 917. Butz itself seemed to equate those "special functions" with "activities intimately associated with the judicial process"--i.e. activities that constitute the functional equivalent of those engaged in by judges, advocates, and witnesses. Id. at 512, 98 S.Ct. at 2913, 57 L.Ed.2d at 919. Because an adjudication within a federal administrative agency shares significant characteristics with the judicial process, the Butz court held that federal officials "who participate in such adjudication should also be immune from suits for damages." Id. at 513, 98 S.Ct. at 2914, 57 L.Ed.2d at 920. In reaching this conclusion the Court reasoned:
 
 
 15
 The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought. .... The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete.
 
 
 16
 Id. at 515, 98 S.Ct. at 2915, 57 L.Ed.2d at 921.
 
 
 17
 Furthermore, the Court observed, safeguards against the administrative officials' misconduct were built into the administrative adjudication process itself. Like the criminal defendant:
 
 
 18
 The defendant in an [administrative] enforcement proceeding has ample opportunity to challenge the legality of the proceeding. An administrator's decision to proceed with a case is subject to scrutiny in the proceeding itself. The respondent may present his evidence to an impartial trier of fact and obtain an independent judgment as to whether the prosecution is justified. His claims that the proceeding is unconstitutional may also be heard by the court.
 
 
 19
 Id. at 515-16, 98 S.Ct. at 2915, 57 L.Ed.2d at 922.
 
 
 20
 The only other circuit courts[3] to decide this particular question have read Butz and Imbler as requiring that state social workers be granted absolute immunity from liability arising from their decisions to file removal petitions.
 
 
 21
 In Meyers v. Contra Costa County Dept. of Social Services, 812 F.2d 1154 (9th Cir.1987) the court held a state social worker absolutely immune from Sec. 1983 liability for his role in initiating a "dependency petition"[4] against a father suspected of abusing his child. The Ninth Circuit cited the reasoning employed by the Supreme Court in Imbler and then stated:
 
 
 22
 Although child service workers do not initiate criminal proceedings, their responsibility for bringing dependency proceedings, and their responsibility to exercise independent judgment in determining when to bring such proceedings, is not very different from the responsibility of a criminal prosecutor. The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit.
 
 
 23
 812 F.2d at 1157.
 
 
 24
 In yet another case involving similar circumstances, the Sixth Circuit also held state social workers absolutely immune from Sec. 1983 actions resulting from the initiation of judicial proceedings. Kurzawa v. Miller, 732 F.2d 1456 (6th Cir.1984). The court rested its holding on the decisions of the Supreme Court in Imbler, Butz, and Briscoe v. LaHue,[5] 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). After reviewing that trilogy of cases, the Sixth Circuit stated:
 
 
 25
 It is [the] responsibility [of defendants], and others in similar positions to protect the health and well-being of the children of Michigan. They must be able to perform the necessary tasks to achieve this goal without the worry of intimidation and harassment from dissatisfied parents. Accordingly, these defendants, pursuant to Briscoe and its predecessors, are entitled to immunity.
 
 
 26
 732 F.2d at 1458.
 
 
 27
 The application of the Butz and Imbler rationales to the current case leads us to the same conclusion as those reached by the Ninth and Sixth Circuits. Under Virginia law, the filing of a removal petition is, in essence, the start of judicial proceedings against the parent or guardian of a minor child, and the duties of the social worker at that point are those of an advocate in that process. Additionally, the four primary public policy considerations discussed by the court in Imbler apply with equal force in this situation. Like a prosecutor, a social worker must exercise her best judgment and discretion in deciding when to file a Removal Petition. The welfare of the state's children would be jeopardized if social workers had to weigh their decision in terms of their potential personal liability. In short, the denial of absolute immunity here has the potential to adversely affect the efficient functioning of the state's child welfare system. Additionally, the chances are high that suits against the social workers would occur with some degree of regularity. Parents, resentful of and humiliated by an attempt to usurp their rights, would likely channel their frustration "into the ascription of improper and malicious actions to the State's advocate."We emphasize, however, that our grant of absolute immunity applies only to those activities of social workers that could be deemed prosecutorial. We in no way intend our decision to be read as holding that such workers are immune from liability arising from their conduct in investigating the possibility that a removal petition should be filed. Indeed, any such holding on our part would involve an over-extension of Imbler, and would be in direct conflict with the other appellate decisions addressing that question. See Imbler, supra 424 U.S. at 430, 96 S.Ct. at 994, 47 L.Ed.2d at 143 ("We have no occasion to consider whether [absolute] immunity [is required] for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate. We hold only that in initiating a prosecution and in presenting the state's case, the prosecutor is immune from a civil suit for damages."); Meyers v. Contra Costa, supra, (making clear that social workers were entitled to only good faith immunity for their investigative conduct prior to filing a dependency petition); Myers v. Morris, 810 F.2d 1437 (8th Cir.1987) (county law enforcement officials and state social workers who investigated the initial complaints of neglect entitled to only good faith immunity); Robison v. Via, 821 F.2d 913 (2d Cir.1987) (Assistant state's attorney and state trooper entitled only to qualified immunity for their role in investigating a complaint that two children were being physically and sexually abused); Austin v. Borel, 830 F.2d 1356 (5th Cir.1987) (Louisiana social workers have only qualified immunity with respect to their decision to file a complaint seeking the removal of children from their parents' home, because state law specifies that the filing of such a complaint does not constitute the initiation of judicial proceedings. Once the complaint is filed, it falls to the state prosecution to decide whether to file a removal petition.)
 
 
 28
 For the reasons set forth herein, we find that Virginia State social workers are absolutely immune from liability resulting from their decision to file a removal petition. The district court's grant of summary judgment in favor of the social workers and the Department of Social Services, therefore, is hereby
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Sec. 16.1-252. Preliminary removal order; hearing.--A. A preliminary removal order in cases in which a child is alleged to have been abused or neglected may be issued by the court after a hearing wherein the court finds that reasonable efforts have been made to prevent removal of the child from his home. The hearing shall be in the nature of a preliminary hearing rather than a final determination of custody
 * * *
 E. In order for a preliminary order to issue or for an existing order to be continued, the petitioning party or agency must prove:
 
 
 [1]
 The child would be subjected to an imminent threat to life or health to the extent that severe or irremediable injury would be likely to result if the child were returned to or left in the custody of his parents, guardian, legal custodian or other person standing in loco parentis pending a final hearing on the petition; and
 
 
 [2]
 Reasonable efforts have been made to prevent removal of the child from his home and there are no alternatives less drastic than removal of the child from his home which could reasonably and adequately protect the child's life or health pending a final hearing on the petition
 
 
 [2]
 The district court found as a matter of law that the social workers were entitled to absolute immunity with respect to their conduct in caring for Eva once the child was removed from her mother's custody. Because the Vosburgs do not challenge this finding on appeal, however, it is unnecessary for us to decide the question, and we leave it for another day
 
 
 [3]
 The only cases holding that a social worker is not entitled to absolute immunity for her role in initiating a judicial proceeding against the parent of an abused or neglected child come from the district courts. See Czikalla v. Malloy, 649 F.Supp. 1212 (D.Colo.1986); Doe v. County of Suffolk, 494 F.Supp. 179 (E.D.N.Y.1980). Two other district courts, however, have specifically rejected the rationale of Czikalla and Doe, and have held that state social workers have absolute immunity for their roles in initiating judicial proceedings such as the one in this case. See Hennessey v. Washington State Dept. of Health and Social Services, 627 F.Supp. 137 (D.Wash.1985); Whelehan v. County of Monroe, 558 F.Supp. 1093 (W.D.N.Y.1983)
 
 
 [4]
 A dependency petition is similar to a removal petition
 
 
 [5]
 Holding that witnesses and other persons who were "integral parts of the judicial process" are entitled to absolute immunity