**Patricia MOODIAN, et al., Plaintiffs,**

v.

**COUNTY OF ALAMEDA SOCIAL SERVICES AGENCY, et al., Defendants.**

**No. C 01–1546 BZ.**

United States District Court, N.D. California.

June 3, 2002.

David J. Beauvais, Law Office of David J. Beauvais, Berkeley, CA, William M. Simpich, Oakland, CA, Linda J. Conrad, Davis, CA, for plaintiffs.

Richard W. Winnie, Jeanine B. Nadel, County of Alameda, Oakland, CA, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

ZIMMERMAN, United States Magistrate Judge.

In their amended complaint, plaintiffs assert violations of 42 U.S.C. § 1983 against social workers Carolyn Black ("Black") and Katherine Moore ("Moore"), and Alameda County Social Services Agency ("County"), based on the temporary removal and detention of the plaintiff children ("children") from their plaintiff mother's ("mother") custody without a warrant.[1] Now before the Court are the parties' cross motions for summary judgment. Defendants move for summary judgment, asserting that plaintiffs have insufficient evidence to prove a violation under § 1983, and that in any event, Black and Moore are entitled to immunity for their actions. In opposition, plaintiffs filed a cross motion. While their motion is not altogether clear, I construe it as seeking a ruling that Black and Moore violated plaintiffs' constitutional rights and that the County has an illegal policy of removing children from their parents' custody without a warrant and absent exigent circumstances.

The uncontroverted evidence before the Court establishes that on April 12, 2000, the County received a referral from a San Francisco Superior Court Judge requesting intervention based on her concern for

---

1. The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings including entry of final judgment pursuant to 28 U.S.C. § 636(c).

the children's emotional well-being. The case was immediately assigned to Emergency Response Worker Black for investigation. On April 20, 2000, Black went to plaintiffs' house, accompanied by one or more police officers, to investigate. Black did not have, and had not sought, a warrant or court order permitting her to enter plaintiffs' house or to remove the children. The mother initially refused to let Black into her house, but after speaking with her attorney, the mother allowed Black to enter her house to conduct the investigation. After observing the mother's behavior and interviewing the children, Black concluded that the children were in imminent danger of emotional harm, removed the children from the mother's home and placed them into temporary custody.

Immediately after the initial removal of the children, the case was assigned to Dependency Investigator Moore to investigate the allegations of abuse and determine whether a California Welfare & Institutions Code § 300 Juvenile Dependency Petition should be filed. Black advised Moore that the children had been removed based on her conclusion that they were in danger of emotional harm. On April 21, 2000, Moore interviewed the mother, and on April 22, 2000, Moore interviewed the children. During Moore's investigation, the children remained in the County's custody. Based on these interviews and a review of the court referral, Moore concluded that the children were emotionally harmed and filed a § 300 dependency petition on April 25, 2000. The children were returned to the mother by agreement reached on August 11, 2000.

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. When the parties submit cross-motions for summary judgment, "[e]ach motion must be considered on its own merits" and "the court must review the evidence submitted in support of each cross-motion." *Fair Housing Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir.2001).

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives a person of her constitutional rights. *See* 42 U.S.C. § 1983. An exploration of plaintiffs' constitutional rights begins with the Fourth Amendment, which generally bans warrantless searches and seizures in a person's dwelling unless there exist exigent circumstances. *See Kyllo v. U.S.,* 533 U.S. 27, 31, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Payton v. New York,* 445 U.S. 573, 588–90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). " 'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' " *Kyllo,* 533 U.S. at 31, 121 S.Ct. 2038 (quoting *Silverman v. U.S.,* 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961)). In addition to the Fourth Amendment, "[t]he Fourteenth Amendment guarantees that parents will not be separated

from their children without due process of law except in emergencies." *Mabe v. San Bernardino County*, 237 F.3d 1101, 1107 (9th Cir.2001) (citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). *See also Wallis v. Spencer*, 202 F.3d 1126, 1136–37 (9th Cir. 2000) (cases cited therein). Applied to the family home, these constitutional principles mean that social workers "may remove a child from the custody of its parent without prior judicial authorization only if the information they possess at the time of the seizure is such as provides reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." *Wallis*, 202 F.3d at 1138. *See also Calabretta v. Floyd*, 189 F.3d 808, 813–14 (9th Cir.1999); *Ram v. Rubin*, 118 F.3d 1306, 1310–11 (9th Cir.1997), *cert. denied*, 522 U.S. 1045, 118 S.Ct. 686, 139 L.Ed.2d 633 (1998).

California has codified this rule in Cal. Welf. & Inst.Code § 306, which provides in relevant part:

> (a) Any social worker in a county welfare department ... may do all of the following: (2) Take into and maintain temporary custody of, without a warrant, a minor who has been declared a dependent child of the juvenile court under Section 300 or who the social worker has reasonable cause to believe is a person described in subdivision (b) or (g) of Section 300, and the social worker has reasonable cause to believe that the minor has an immediate need for medical care or is in immediate danger of physical or sexual abuse or the physical environment poses an immediate threat to the child's health or safety.

Cal. Welf. & Inst.Code § 306(a)(2). California has also enacted regulations which require that warrantless removals be carried out pursuant to § 306. (Defs.' Req. for Judicial Notice, Ex. A ("Div. 31 Regs."), Reg. 31–135.) The County has adopted these regulations and trains new social workers in accordance with them. (Beauvais Decl., DeAngelis Dep. at 40:22–41:3.)

■ Black does not claim that she had a belief that the children were in imminent danger of physical harm when she removed them without a warrant. Instead, she claims that while in the house, she developed a concern that the children "were in imminent danger of emotional harm." (Black Decl. at 3:15.) Recognizing the rules discussed above, defendants do not dispute that Black removed the children from their home in violation of state law, since state law does not have an exception for emotional harm. *See* Cal. Welf. & Inst.Code § 306(a)(2). Nonetheless, defendants claim that removing children believed to be subject to emotional harm does not violate the Constitution, a predicate for plaintiffs' federal claims. Alternatively, defendants contend that even if plaintiffs' constitutional rights were violated, those rights were not clearly established at the time of the removal and therefore Black is entitled to qualified immunity. In their cross motion, plaintiffs seek a determination that Black violated their constitutional rights when she removed the children.

■ Qualified immunity protects an official from liability if "(1) the law governing the official's conduct was clearly established; and (2) under that law, the official objectively could have believed that her conduct was lawful." *Mabe*, 237 F.3d at 1106 (citing *Ram*, 118 F.3d at 1310).[2] Under the first prong of this test, defendants

---

**2.** The Supreme Court recently reformulated the standard for qualified immunity in the context of harmonizing the qualified immunity analysis with the question of whether an

have cited no authority for the proposition that the Constitution permits a warrantless removal of a child based on a concern that he is in imminent danger of emotional, as opposed to physical, harm. Every case of which this court is aware which has considered this issue has defined the exigency exception to the Fourth Amendment solely in terms of imminent danger of physical harm. *See, e.g., id.* at 1108; *Wallis,* 202 F.3d at 1138 (collecting cases); *Calabretta,* 189 F.3d at 814–15. The California Legislature came to the same conclusion when it enacted § 306.

Defendants have made no showing to support the establishment of an emotional harm exception to the constitutional rule. It is not hard to understand why no such showing was made since it is difficult to conceive of situations in which there is no concern for the child's physical safety, yet the concern for the child's emotional health is so immediate that there is no time to

officer used excessive force in making an arrest:

> A court required to rule upon the qualified immunity issue must consider ... this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? ... [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry ... must be undertaken in light of the specific context of the case, not as a broad general proposition.... The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Saucier v. Katz,* 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). It is unclear whether this particular formulation of the qualified immunity analysis was intended to apply only to excessive force claims. *See Robinson v. Solano County,* 278 F.3d 1007, 1009, 1011–13 (9th Cir.2002); *Headwaters*

obtain a warrant for his removal. Unlike physical harm, such as a beating, which can have immediate and dire consequences, emotional harm by its nature does not carry the same immediacy. For all these reasons, I conclude that Black violated the plaintiffs' constitutional rights when she removed the children from their home based solely on her belief that they were in imminent danger of emotional harm.[3] I also conclude that these rights were clearly established at the time of the removal, given the relevant case law and the explicit language of the California statute.[4] Frankly, it is difficult to conceive how a social worker, whose work is directly governed by state law and regulation, could claim to have a reasonable belief that a warrantless removal that is expressly prohibited by state law and regulation is somehow permitted by the Constitution.

 Plaintiffs next claim that Moore deprived them of their constitutional rights

*Forest Defense v. County of Humboldt,* 276 F.3d 1125, 1127 (9th Cir.2002). However, because I find that plaintiffs' rights were violated and the law was clearly established at the time of Black's conduct such that she should have been aware that she was violating plaintiffs' constitutional rights, it is not necessary to determine the precise formulation of the qualified immunity standard.

3. Given this ruling, I need not decide whether Black could have reasonably believed that these children were in imminent danger of emotional harm.

4. Given the clear nature of the constitutional rule, the fact that there is no direct precedent on emotional harm as an exigent circumstance does not help defendants. *See, e.g., Headwaters Forest Defense,* 276 F.3d at 1131 (quoting *Deorle v. Rutherford,* 272 F.3d 1272, 1274–75 (9th Cir.2001)) ("'[A] law can be violated 'notwithstanding the absence of direct precedent ... [o]therwise, officers would escape responsibility for the most egregious forms of conduct simply because there was no case on all fours prohibiting that particular manifestation of unconstitutional conduct.' ").

by keeping the children in custody pending her decision to initiate a § 300 dependency proceeding on April 25, 2000. Defendants argue that as a social worker responsible for bringing dependency proceedings, Moore is entitled to absolute immunity. "Social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa County Dep't of Soc. Serv.*, 812 F.2d 1154, 1157 (9th Cir.), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987). *See also Coverdell v. Dep't of Soc. and Health Serv.*, 834 F.2d 758, 762–764 (9th Cir.1987). However, when a social worker's actions are "neither ... advocatory [nor] quasi-judicial [and do] not aid [her] in the preparation or presentation of [her] case to the juvenile court," she is not entitled to absolute immunity. *Meyers*, 812 F.2d at 1157.

Plaintiffs concede that Moore is entitled to absolute immunity for her investigation and decision to initiate the § 300 dependency petition. However, they claim that because she knew that Black removed the children without a warrant based solely on her concern that the children were subject to emotional harm, Moore's decision to maintain custody of the children, an action neither advocatory nor quasi-judicial, is not entitled to absolute immunity. Cal. Welf. & Inst.Code § 309 provides in part:

(a) Upon delivery to the social worker of a child who has been taken into temporary custody under this article, the social worker shall immediately investigate the circumstances of the child and the facts surrounding the child's being taken into custody and attempt to maintain the child with the child's family through the provision of services. The social worker shall immediately release the child to the custody of the child's parent, guardian, or responsible relative unless one or more of the following conditions exist:

. . . . .

(2) Continued detention of the child is a matter of immediate and urgent necessity for the protection of the child and there are no reasonable means by which the child can be protected in his or her home or the home of a responsible relative.

Cal. Welf. & Inst.Code § 309(a)(2). It is clear from the record that Moore was aware that Black had seized the children, without a warrant or court order, based on her conclusion that they were in imminent danger of emotional, not physical, harm. (Beauvais Decl., Ex. D ("Moore Dep.") at 92:13–18; Moore Decl. at 2:7–14; Moore Decl., Ex. C, Detention Hearing Report at 10.) What is not clear, however, is whether Moore had the responsibility pursuant to § 309 "to immediately return" the children to a family member or other responsible person while investigating the circumstances of their removal, let alone that she, and not Black, decided to maintain custody of the children pending her investigation. As a Dependency Investigation worker, Moore's responsibilities include deciding whether to file a § 300 Juvenile Dependency Petition and making a recommendation to the Juvenile Court for a detention hearing. (Moore Decl. at 1:27–2:3; Moore Dep. at 104:3–21.) Yet Moore has testified that she has no discretion to file a petition and release a child back to his home. (Moore Dep. at 131:16–22.) While plaintiffs claim this testimony means that Moore is responsible for the ongoing detention because she did not think she had the ability to release the children if she intended to file a petition, the import of this testimony is not clear to me, and the parties were unable to clarify its meaning at the hearing. There is nothing else in the record which specifically addresses

Moore's responsibility for the ongoing detention. Based on this record, I cannot determine as a matter of law whether Moore exceeded the scope of her absolute immunity by maintaining custody of the children.

■■■■ Finally, the parties move for summary adjudication of whether the County has a policy or custom of depriving parents of custody of their children without a warrant and absent exigent circumstances. A plaintiff seeking to impose liability on a municipality under § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of the County Comm'rs v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (citing *Monell v. Dep't of Soc. Serv.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404, 117 S.Ct. 1382. *See also Gibson v. County of Washoe,* 290 F.3d 1175, 1185–86 (9th Cir.2002); *Bouman v. Block,* 940 F.2d 1211, 1231 (9th Cir.), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991). Even if a plaintiff identifies conduct attributable to the municipality, she "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of the County Comm'rs,* 520 U.S. at 404, 117 S.Ct. 1382.

Defendants argue that the County has adopted the Department of Social Services, Division 31 regulations, which specifically refer a social worker to Cal. Welf. & Inst. Code § 306 for authority for the involuntary removal of a child from his parents' custody. (Div. 31 Regs., Reg. 31–135.) There is also testimony from Donna DeAngelis, the interim assistant agency director for the Department of Children and Family Services in Alameda County whose responsibilities include supervising the administrative and programmatic levels of the Department, that new employees are trained in accordance with the Division 31 regulations and the California Welfare & Institutions Code. (Beauvais Decl., DeAngelis Dep. at 40:22–41:3.) However, DeAngelis further testified that emergency response workers neither had nor referred to these documents while making the actual determination to remove a child. (*Id.* at 46:1–20.)

Plaintiffs, on the other hand, present the testimony of Black who, in responding to questions about her experience with Child Protective Services in obtaining warrants when removing children from their parents' custody, repeatedly made statements such as "we don't get warrants," and "[w]e don't assume that every case needs a warrant . . . [a]nd it's not standard child welfare practice to have a warrant." (Beauvais Decl., Ex. B ("Black Dep.") at 119:9–120:4; 136:7–8.) Black further testified that she was trained to get a warrant only if a parent does not allow her into his home, not as a requisite for removing a child. (*Id.* at 136:9–138:4.) Plaintiffs also presented testimony from DeAngelis that she was aware of no circumstances under which social workers in her Department would obtain a warrant to remove a child from his parents' custody. (Beauvais Decl., DeAngelis Dep. at 25:17–22.)

Despite the existence of the training program that refers workers to the regulations and the Welfare & Institutions Code, the testimony of Black and DeAngelis is sufficient to raise a genuine issue of material fact regarding the existence of a custom or practice that was the moving force behind the removal of the children without a warrant. *See, e.g., Wallis,* 202 F.3d at

1142–43 (testimony of a "longstanding agreement" of enforcing orders to take children into protective custody without ever seeing the orders was enough to raise an issue of material fact for the jury regarding the existence of a city practice). In fact, "the existence of a pattern of ... conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Bd. of the County Comm'rs*, 520 U.S. at 407–08, 117 S.Ct. 1382 (citing *City of Canton v. Harris*, 489 U.S. 378, 390–91, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). *See also Gibson*, 290 F.3d at 1194–96.

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for partial summary judgment on the issue of Black's liability is **GRANTED** and defendants' motion for summary judgment on the issue of Black's liability and immunity is **DENIED.** I find that Black violated the plaintiffs' constitutional rights when she removed the children from the mother's custody without a warrant solely based on her belief that they were in imminent danger of emotional harm. Black is not entitled to any immunity for her actions.

2. Plaintiffs' motion for partial summary judgment on the issue of Moore's liability is **DENIED** and defendants' motion for summary judgment on the issue of Black's liability and immunity is **DENIED.** Based on the incomplete record before me, I cannot determine whether Moore is liable for maintaining custody of the children pending the filing of the § 300 dependency petition.

3. The parties' motions for summary judgment on the issue of the County's liability under § 1983 are **DENIED.**

There exists a genuine issue of material fact such that a jury should properly decide whether the County had a policy or custom of removing children from their parents' custody without a warrant and absent exigent circumstances.