**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| GREGORY MURRAY,<br><br>              Plaintiff-Appellant,<br><br>  v.<br><br>SANDRA ANDRADE, individually and in her official capacity as social worker for the County of Contra Costa,<br><br>              Defendant-Appellee. | No. 09-16901<br><br>D.C. No. 3:08-cv-01539-TEH<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Thelton E. Henderson, District Judge, Presiding

Argued and Submitted October 7, 2010
San Francisco, California

Before: REINHARDT and BERZON, Circuit Judges, and POLLAK, Senior District Judge.**

Murray appeals from the District Court's order granting summary judgment

to Andrade on two independent grounds, namely, judicial estoppel and absolute

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

** The Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

immunity. For the reasons that follow, we vacate and remand to the District Court for further proceedings.

## I. Background

Gregory Murray brings this § 1983 suit against Sandra Andrade, a social worker for Contra Costa County, for events arising out of his marriage to, divorce from, and procreation with S.A.M. (resulting in a child, Baby J.). He alleges Andrade violated his civil rights by not permitting him to take immediate custody of Baby J. once she was removed from S.A.M.'s home, by placing Baby J. in foster care, and by proceeding with dependency hearings.

Murray married S.A.M. in May 2005 in California, but he left for Florida and filed for divorce in the summer of 2005. During the Florida divorce proceedings, he claimed that there were no children born of the marriage, denied that S.A.M. was pregnant, and denied paternity of any unborn child S.A.M. might be carrying. He maintained this position through the final Florida judgment of divorce in October 2006, which expressly concluded that no children were born of the marriage.

At the same time, the Children and Family Services Bureau of Contra Costa County was involved with S.A.M. and Baby J. after the mother tested positive for drugs at the child's birth in February 2006. By summer of 2006, Andrade had

initiated dependency proceedings, S.A.M.'s children had been removed from S.A.M.'s custody to foster care, and court hearings were scheduled to place Baby J. and her siblings in adoptive homes permanently. There is a dispute between Murray and Andrade as to the nature of their communications during this period, whether he was provided notice of the dependency proceedings prior to October 2006, whether he was referred to counsel, and whether he had an opportunity to appear to assert his parental rights. Murray eventually appeared in the dependency proceedings with counsel in March 2007, and by August 2007, Baby J. was placed in his custody and has been ever since.

In March 2008, Murray brought this § 1983 suit against Andrade (and others who were later dismissed from the case). Andrade moved for summary judgment, which the District Court granted on two independent grounds: first, the District Court applied the doctrine of judicial estoppel, precluding Murray from asserting the claims based on his asserted paternity because he had contemporaneously advanced a contrary position in the Florida court proceedings; second, the District Court held that Andrade was entitled to absolute immunity because her acts were part of her quasi-prosecutorial function of initiating and pursuing child dependency proceedings. Judge Henderson expressly did not reach the question of qualified immunity. Murray now appeals the District Court's grant of summary judgment.

## II.  Analysis

### A.  Judicial estoppel

The District Court's first ground for granting summary judgment was judicial estoppel.  We disagree that this was an appropriate case for application of that doctrine.  *See New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001) (identifying three non-exhaustive factors[1] that "typically inform the decision whether to apply [judicial estoppel] in a particular case").  Murray's claims in this suit are premised not on his actual paternity of Baby J., which he contested successfully in the Florida courts, but on his status as an alleged or presumed father entitled to notice of juvenile proceedings pursuant to California law.  *See* Cal. Fam. Code § 7611(a); Cal. Welf. & Inst. Code §§ 290.1(a)(2), 290.2(a)(2).  Accordingly, the District Court erred in finding his litigation position "clearly inconsistent" with the position taken in the Florida courts.

### B.  Absolute immunity

---

[1] The three factors are: (1) the party's later position "must be 'clearly inconsistent'" with its earlier position; (2) whether the party has succeeding in persuading a court to accept that party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  532 U.S. at 750–51.

-4-

The District Court held in the alternative that Andrade had absolute immunity. We disagree and hold that the District Court erred in granting summary judgment on the basis of absolute immunity because a genuine issue of material fact exists as to whether Murray actually received notice from Andrade. *See* Fed. R. Civ. P. 56(c)(2). Providing notice to alleged fathers is not a discretionary act under California law, *see* Cal. Welf. & Inst. Code § 290.1(a)(2) (the "social worker *shall* serve notice. . . [to] [t]he father or fathers, presumed and alleged." (emphasis added)), and it is not akin to the types of "quick decision[s] based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children" for which we have afforded social workers a quasi-prosecutorial absolute immunity. *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.3d 1154, 1157 (9th Cir. 1987). Thus, if Andrade did not provide notice, she is not entitled to absolute immunity.

On the record before the District Court, summary judgment on absolute immunity grounds was inappropriate. In the absence of other evidence, such as certificates of service, copies of filings in juvenile court, or certified mail receipts, the only evidence on the question of notice consisted of affidavits claiming or denying service of notice. This credibility contest is not to be resolved at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

-5-

(1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge . . . . The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."). This case is therefore remanded to the District Court for further proceedings.

**C.    Qualified immunity**

Because the District Court did not rule on qualified immunity, we decline the parties' invitation to decide the issue at this time and leave it to the District Court to evaluate in the first instance on remand.

**III.    Conclusion**

For these reasons, we vacate the judgment of the District Court and remand for further proceedings.

**VACATED AND REMANDED.**

*Murray v. Andrade*, No. 09-16901

**REINHARDT**, Circuit Judge, dissenting:

During his divorce proceedings, Murray represented to the Florida courts that he was not Baby J.'s natural father, presumably in an effort to avoid certain financial obligations that would follow from a finding of paternity. Now, in an effort to obtain money damages from a county social worker, he asserts that at the same time he was representing to Florida courts that he was not Baby J.'s father, he was entitled to a presumption under California law that he *is* Baby J.'s natural father. *See* Cal. Fam. Code § 7611 ("A man is presumed to be *the natural father of a child* if . . . .") (emphasis added). Murray's vigilance in asserting his presumed parental rights in California makes it clear that "the [Florida] . . . court was misled" when it concluded, at Murray's urging, that he was not the natural father and that no children were born of his marriage. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F. 2d 595, 599 (6th Cir. 1982)). Murray found one position convenient when it helped him avoid child support payments, and another convenient when faced with the possibility that his child would be placed in foster care. I would therefore hold that Murray's assertion of presumed fatherhood in this case is clearly inconsistent with his denial of paternity in the Florida courts, and I certainly cannot agree with the majority

1

that the district judge abused his discretion in finding such to be the case.

Moreover, even if I agreed with the majority that California's use of a statutory presumption to determine natural paternity injects a degree of ambiguity into the analysis of clear inconsistency, I still would not hold that the district judge abused his equitable discretion in this case. Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Id.* (quoting *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). The Supreme Court has advised us that there are no "inflexible prerequisites or an exhaustive formula" that governs the district judge's discretion to invoke judicial estoppel. *Id.* at 751. The facts here are quite disturbing. Murray represented to the Florida courts that he was not Baby J.'s father until he succeeded in obtaining a final divorce judgment finding that "no children were born of the marriage" between Murray and Baby J.'s mother on October 4, 2006, two months *after* Murray had informed a California agency of his presumed paternity and asked for a paternity test. Accordingly, even if the majority were correct that Murray's position in this suit is not clearly inconsistent with his denial of natural fatherhood in Florida courts, I would still hold that the district judge acted within his equitable discretion in concluding that Murray's prior denial of paternity "firmly tip[s] the balance of equities in favor of barring" this suit. *Id.*

2

I respectfully dissent.