Jack **FANNING** and Carol
Fanning h/w

v.

**MONTGOMERY COUNTY CHILDREN
AND YOUTH SERVICES, et al.**

Civ. A. No. 88–3729.

United States District Court,
E.D. Pennsylvania.

Dec. 29, 1988.

Julia M. Quinn, Norristown, Pa., for plaintiffs.

Stephen Heckman, Norristown, Pa., for defendants.

## OPINION

LOUIS H. POLLAK, District Judge.

Plaintiffs, Jack and Carol Fanning, brought suit under 42 U.S.C. § 1983 and § 1985 alleging that the defendants, Kevin Mason and Montgomery County Children and Youth Services ("CYS"), maliciously, negligently, and recklessly removed the

Fanning's child, Nancy Fanning, from the Fanning home. In particular, plaintiffs allege that the defendants' decision to remove Nancy from her parents' custody prior to court proceedings as well as their failure to investigate adequately charges of child abuse prior to the initiation of such proceedings deprived the Fannings of their liberty without due process of law, in violation of the Fourteenth Amendment of the United States Constitution. In addition, plaintiffs allege that defendants violated their constitutional due process rights by refusing to permit Nancy to communicate with them once she had been placed in foster care.

The case is presently before the court on defendants' motion to dismiss.[1] Defendant Kevin Mason, a caseworker for CYS, seeks dismissal on the ground that he is entitled to absolute immunity in his performance of the activities on which plaintiffs base their constitutional claims. In the alternative, Mr. Mason argues that he violated no clearly established right of the plaintiffs, and is therefore free from liability even under the less protective cloak of qualified immunity.

Defendant CYS argues that the plaintiffs fail to allege a pattern or practice of unconstitutional conduct on the part of CYS. Accordingly, CYS moves to dismiss on the ground that plaintiffs seek recovery under a theory of respondeat superior, which is noncognizable under § 1983. Further, CYS contends that punitive damages are not recoverable as a matter of law against CYS.

### The Facts Alleged in the Complaint

Plaintiffs base their claims on the following factual allegations: On April 15, 1987, Nancy Fanning, then ten years old, spoke with a minister at school and expressed a fear of going home. The minister contacted Mr. Mason at CYS for guidance in handling the child's fears. Mr. Mason, suspecting child abuse, advised the minister that he would pick up Nancy from school that day. Mr. Mason then called the Fan-

---

1. Although the defendants have attached to their motion portions of the juvenile record of the Fannings' proceeding before the Pennsylvania Court of Common Pleas, neither plaintiffs nor defendants rely on any documents outside of their pleadings. Hence, this motion to dismiss need not be treated as a motion for summary judgment.

nings, advised them of his suspicion of abuse, and stated that he would speak with Nancy and return her home by 5:00 p.m. Later, a dispatcher at CYS informed the Fannings, by phone, that CYS was going to keep Nancy overnight and that a hearing was scheduled for the following morning in the Court of Common Pleas. The Fannings informed CYS that they would be unable to attend the hearing because they did not have a lawyer or transportation to the courthouse. CYS failed to communicate this information to the court. At the hearing the next day, the minister asked for a continuance on the plaintiffs' behalf, but the court denied the continuance and placed Nancy in a foster home. During her stay in the foster home, Nancy was not permitted to contact her parents. When a teacher at school allowed Nancy to call home, Mr. Mason strongly reprimanded the teacher and advised her that Nancy was not to speak with her parents. Because Nancy's teacher allowed Nancy to contact her mother, the defendants placed Nancy in a new foster home and she was not permitted to attend school for the remainder of the week. At no time while Nancy was held in the foster home did the defendants conduct an investigation. On April 23, 1987, a detention hearing was held at which the judge ordered a psychiatric evaluation of the plaintiffs. That evaluation fully exculpated the plaintiffs, and Nancy was thereafter returned home.

### Plaintiffs' Claims Against Kevin Mason

Plaintiffs present two claims against Kevin Mason. Their first claim relates to Mr. Mason's choice to initiate proceedings to have Nancy removed from plaintiffs' custody. Plaintiffs contend that Mr. Mason failed to investigate fully the suspected abuse of Nancy prior to initiating those proceedings. In the plaintiffs' view, minimum investigation before the custody hearing would have revealed that the charges of abuse were unfounded and would have prevented the family's physical separation and emotional trauma. Plaintiffs' second claim relates to Mr. Mason's decisions to separate Nancy from her parents prior to the custody hearing and to prevent her from contacting her parents after she had been placed in foster care. They maintain that Mr. Mason did not have sufficient reason to believe that Nancy was in imminent danger so as to justify these actions.

### Mr. Mason's Immunity Defenses

#### 1. Absolute Immunity

■ Whether a public official can successfully plead immunity—absolute or qualified—in defense against a law suit arising out of the performance of official duties depends on the nature of those duties. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (state prosecuting attorney acting within the scope of duties in initiating and pursuing a criminal prosecution is not amenable to suit under 42 U.S.C. § 1983). Following this functional approach to immunity, courts have held that officials acting in *prosecutorial* roles are absolutely immune from suit under 42 U.S.C. § 1983. *See, e.g., Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (officials in the Department of Agriculture are absolutely immune from suits based on their decision to initiate administrative proceedings).

Courts have generally, although not uniformly, extended this rationale to social workers, finding them absolutely immune from suit in the performance of prosecutorial functions. *Compare Meyers v. Contra Costa County Dept. of Social Services,* 812 F.2d 1154, 1157 (9th Cir.) (child service worker is entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings), *cert. denied,* — U.S. —, 108 S.Ct. 98, 98 L.Ed. 2d 59 (1987), and *Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir.1984) (state employees charged with presenting neglect and delinquency petitions to state courts are absolutely immune from suit) *with Doe v. County of Suffolk,* 494 F.Supp. 179 (E.D.N.Y.1980) (analogizing social welfare worker's function to that of policeman rather than prosecutor and limiting such worker's immunity to qualified rather than absolute immunity) and *Rinderer v. Delaware County Children and Youth Servic-*

*es,* slip op. at 6, 703 F.Supp. 358, 361 (E.D.Pa. March 19, 1987) (holding that "social workers, unlike prosecutors, do not enjoy absolute immunity").

On balance, I conclude that absolute immunity should cloak social workers with respect to their initiation of child abuse proceedings. That critical official function is "sufficiently analogous" to the role of prosecutors in initiating criminal proceedings to warrant the same treatment. *Mazor v. Shelton,* 637 F.Supp. 330, 334 (N.D. Cal.1986). There may indeed be instances in which incompetent or overzealous social workers could subject innocent individuals to the difficulties and trauma of unwarranted court proceedings. But the potential cost to society of policing such errors through damage actions directed against the offending social workers would be very high. If social workers, in deciding whether to file a petition charging child abuse or neglect, " 'were forced to execute their duties with one eye constantly regarding the possibility of incurring liability for their conduct,' " the broad "public interest in protecting abused or neglected children" would be disserved. *Mazor,* 637 F.Supp. at 335 (quoting *Whelehan v. County of Monroe,* 558 F.Supp. 1093, 1098 (W.D.N.Y. 1983)). Certainly, society's interest in having social workers perform their prosecutorial functions independently is no less than society's interest in preserving the independence of criminal prosecutors. Accordingly, the same shield of absolute immunity extended to prosecutors in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), should be available to social workers acting in their prosecutorial capacity.

■ Based on the foregoing analysis, I find Mr. Mason to be absolutely immune from suit for his decision to initiate dependency hearings on behalf of Nancy Fanning. Plaintiffs' claims against Mr. Mason, insofar as they allege insufficient investigation prior to the initiation of child dependency proceedings, will be dismissed.

I now turn to the more difficult question of whether Mr. Mason, in removing Nancy from her parents' custody prior to the hearing and in disallowing contact between the Fannings and their daughter once she had been removed, remained within his prosecutorial role, and hence within the cloak of absolute immunity.

■ Plaintiffs argue that the decision to remove a child from her family prior to a court hearing, unlike the decision to initiate charges, is a nonprosecutorial function. On this basis, they maintain that Mr. Mason is entitled only to qualified immunity for his actions relating to the removal of their daughter prior to the court hearing.[2] Qualified immunity, unlike absolute immunity, does not protect an official from suit for violations of legal norms clearly established at the time of the official actions complained of. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

■ Among the courts that have recognized absolute immunity for social workers acting in prosecutorial roles, there remains disagreement as to which activities are in fact prosecutorial. In *Meyers v. Contra Costa County Dept. of Social Services,* 812 F.2d 1154 (9th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987), the Ninth Circuit found a social worker's efforts to keep a parent away from his children prior to a hearing in juvenile court to be nonprosecutorial. The court reasoned that the availability of abso-

**2.** Mr. Mason's authority to remove Nancy from her family, prior to a hearing in court on the merits of her parents' suspected abuse, stems from Pennsylvania's juvenile matters statute, 42 Pa.C.S.A. § 6301 et seq. Section 6324 of the statute provides, in part, that:

A child may be taken into custody ... [b]y a law enforcement officer or duly authorized officer of the court if there are reasonable grounds to believe that the child is suffering from illness or injury or is in imminent dan-

ger from his surroundings, and that his removal is necessary.

Section 6325 further provides that:

A child taken into custody shall not be detained or placed in shelter care prior to the hearing on the petition unless his detention or care is required to protect the person or property of others or of the child....

Plaintiffs contend that Mr. Mason failed to make the requisite finding of "imminent danger" prior to removing Nancy from her family.

lute immunity depends on the "presence of safeguards built into the judicial process that tend to reduce the need for private damage actions as a means of controlling unconstitutional conduct." 812 F.2d at 1158. The court regarded the social worker's efforts to separate the father from his children as being made in the absence of such safeguards, because his decisions were not intended to persuade an impartial arbiter to reach a particular decision regarding the father's status with his children. Rather, the social worker attempted, prior to judicial proceedings, to forge a solution to the family's difficulties that conformed to his own perception of the children's risk. The court concluded:

> Haaland's ordering of Meyers away from his home can be characterized neither as advocatory or quasi-judicial. Haaland's action did not aid him in the preparation or presentation of his case to the juvenile court. Rather than contributing to an informed judgment by an impartial decisionmaker as an advocate, Haaland acted unilaterally prior to the operation of the judicial process. We do not suggest that Haaland's alleged action was necessarily improper; it was merely not that of an advocate.
>
> .　.　.　.　.
>
> Haaland himself was not subject to the checks operating on judicial decisionmakers, nor was his decision part of or ancillary to pending judicial proceedings supervised by a judge.
>
> 812 F.2d at 1157–58.

Similarly, in *Fogle v. Benton County SCAN*, 665 F.Supp. 729, 734 (W.D.Ark. 1987), the court, in dicta, distinguished between a social worker's decision to initiate child abuse proceedings and the decision to "unilaterally attempt[ ] to influence the parent-child relationship." 665 F.2d at 734. The court regarded the latter decision as nonprosecutorial, and hence outside the protection of absolute immunity.

The opposite view is found in *Mazor v. Shelton*, 637 F.Supp. 330 (N.D.Cal.1986), in which the court held that social workers are absolutely immune for decisions pertaining to temporary or protective custody of minors. The court regarded the emergency decision of a social worker to remove a child from a potentially abusive situation as deserving of absolute immunity, because like the decision to initiate proceedings, "it is 'very difficult if not impossible' for social workers to be absolutely certain whether the information on which they act is objectively true." 637 F.Supp. at 334 (quoting *Imbler*, 424 U.S. at 440, 96 S.Ct. at 999).

I find the reasoning of *Meyers* to be persuasive. For a decision to be prosecutorial within the meaning of *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed. 2d 895 (1978), it must be made in "the presence of safeguards built into the judicial process." *Meyers*, 812 F.2d at 1158. In such circumstances, the possibility that officials will act maliciously or wantonly is lessened "by the knowledge that their assertions will be contested by their adversaries in open court." *Id.* More importantly, in the context of a judicial or quasi-judicial proceeding, the ultimate determination of the rights of the parties rests not with the official-actor, but with an impartial arbiter. This distance between the official's actions and the adjudicator's authority provides an opportunity for mitigation of the effects of unjustified prosecutorial conduct, and thus makes less worrisome the extension of absolute immunity.

Conversely, when an official has the power to affect unilaterally the rights and interests of others, and exercises that power unchecked by adversarial proceedings, the official should not be absolutely immune from suit. Accordingly, Mr. Mason cannot claim absolute immunity for his decision to remove Nancy Fanning from her parents home, which was made prior to the initiation of dependency proceedings and without the authorization of an independent decisionmaker. Nor can he claim absolute immunity for his refusal to allow Nancy to contact her parents after she was placed in foster care. Both of these decisions, regardless of their merit, are not of the type to which the Supreme Court has extended the extraordinary protection of absolute immunity.

In so holding, I am not unmindful of countervailing considerations. It is vitally important that social workers retain their independence in deciding whether to remove children from potentially abusive environments. In fact, Pennsylvania, recognizing that children facing immediate risk of abuse are in need of emergency intervention, has explicitly authorized social workers, in conjunction with the police, to remove children from situations of imminent danger. *See supra* note 2.

Nonetheless, absolute immunity remains "the rare exception" to the rule of qualified immunity. *Meyers*, 812 F.2d at 1158; *see also Butz*, 438 U.S. at 478, 96 S.Ct. at 2896 (absolute, rather than qualified immunity is available only in "those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business"). I am not persuaded that a social worker's inability to be "absolutely certain" about emergency decisions is sufficient ground for departing from this general presumption. *Mazor*, 637 F.Supp. at 334. Qualified immunity confers adequate protection for officials who make "mere mistakes in judgment." *Butz*, 438 U.S. at 507, 96 S.Ct. at 2911. Only when an official violates clearly established rights of which the official should have been aware is the official subject to a federal damages action under the qualified immunity standard.

### 2. Qualified Immunity

The remaining question with respect to Mr. Mason is whether the plaintiffs have alleged a violation of a clearly established right of which Mr. Mason should have been aware. The plaintiffs base their claims on the Fourteenth Amendment, alleging violations of both procedural and substantive due process.

#### Procedural Due Process

■ To state a procedural due process claim against Mr. Mason, plaintiffs must allege that he deprived them of a constitutionally protected liberty or property interest without the benefit of constitutionally required procedures. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.

2d 18 (1976). In deciding what process is due, courts are to weigh the incremental value of additional procedures against their costs. Although persons may ordinarily expect an opportunity to be heard prior to an adverse governmental decision regarding a substantial interest, post-deprivation process is appropriate where countervailing state interests are of an unquestionably strong nature and pre-deprivation process would insufficiently protect those countervailing interests. *See, e.g., Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979).

■ Plaintiffs do not seem to argue that the procedural safeguards afforded by the statutory authority under which Mr. Mason operated, 42 Pa.C.S.A. § 6301 et seq., are constitutionally inadequate. Indeed, it seems clear that the post-deprivation process contemplated by the statute—a hearing within seventy-two hours of a child's removal from her family's custody—affects a constitutionally-sufficient balance of the strong interest of parents in the custody of their children and the risk of erroneous interference with that custody, on the one hand, and the state's interest in protecting minors from a potentially abusive environment, on the other. *See, e.g., In Re Scott County Master Docket*, 672 F.Supp. 1152, 1169–70 (D.Minn.1987) (stating that "[i]n a child removal context, post-deprivation remedies may be particularly appropriate"); *see also Fitzgerald v. Williamson*, 787 F.2d 403, 408 (8th Cir.1986) (finding that defendants' failure to provide parents with a hearing prior to reducing visits with their child did not violate procedural due process given the availability of post-deprivation process).

Plaintiffs' procedural due process claim seems to turn on Mr. Mason's alleged failure to inform the Court of Common Pleas of plaintiffs' request for a continuance. Plaintiffs argue that Mr. Mason should have presented the continuance request at the April 16, 1987 hearing, which was held the day after Nancy was removed from her family. This claim lacks merit. Procedural due process does not require a social worker to serve as an advocate on behalf

of parents suspected of child abuse. Procedural due process is satisfied by the *"opportunity* to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews,* 424 U.S. at 333, 96 S.Ct. at 902 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)) (emphasis added). Plaintiffs had an obligation to make full use of their opportunity to be heard following the removal of Nancy from their custody. If, as they allege, they were not able to attend the hearing provided for their benefit, they alone had the responsibility of communicating their difficulty.[3] To hold otherwise would place an onerous time burden on social welfare agencies. On the one hand, they would be obligated, as they are in any event, to ensure that a hearing is held sufficiently soon after a child's removal to comport with due process. On the other, they would be obligated to ensure that the hearing is not held *too* soon after the removal to inconvenience the parents, or they would then incur the additional responsibility of explaining the parents' absence. The requirements of procedural due process do not impose such a burden.

Accordingly, plaintiffs have not stated a procedural due process claim against Mr. Mason.

*Substantive Due Process*

■ Substantive due process protects the fundamental rights of parents in the care, custody and management of their children. *Rinderer v. Delaware County Children and Youth Services,* Civil Action 85–6496, slip op. at 4, —— F.Supp. ——, —— (E.D.Pa. March 19, 1987); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Ruffalo v. Civiletti,* 702 F.2d 710, 715 (8th Cir.1983). Courts have long held that the interest of parents in preserving the autonomy and privacy of their family is of the highest order. *See, e.g., Bohn v. County of Dakota,* 772 F.2d 1433, 1435 (8th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986) ("We can conceive of no more impor-

tant relationship, no more basic bond in American society, than the tie between parent and child."). This right may be abridged only when the "demands of an organized society" outweigh the parents' interest. *See Youngberg v. Romeo,* 457 U.S. 307, 320, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28 (1982) (quoting *Poe v. Ullman,* 367 U.S. 497, 542, 81 S.Ct. 1752, 1776, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting)) (weighing, in the context of involuntary commitment to a state mental institution, the liberty interest of the committed against the relevant state interests).

■ To state a substantive due process claim in the context presented here—a social worker's alleged interference with parents' custody rights—plaintiffs must allege conduct so arbitrary and unreasonable as to "shock the conscience of the court." *In Re Scott County Master Docket,* 672 F.Supp. 1152, 1166 (D. Minn.1987) (quoting *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980)). In this case, plaintiffs contend that Mr. Mason's removal of Nancy solely on the basis of an uncorroborated conversation with a minister, without a showing of imminent danger, violated their substantive due process rights. Moreover, they suggest that Mr. Mason's refusals to allow Nancy to contact them after she was removed from their custody was maliciously motivated.

As to the first claim, that Mr. Mason failed to determine whether Nancy was in imminent danger prior to her removal, plaintiffs have not alleged maliciousness or outrageousness on the part of Mr. Mason sufficient to sustain a substantive due process claim. At most, plaintiffs make out a case of "excess of zeal," which does not provide a basis for a substantive due process claim. *See In Re Scott County Master Docket,* 672 F.Supp. 1152, 1166 (D.Minn.1987) (quoting *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980)).

■ Plaintiffs do allege malice in their claims regarding Mr. Mason's conduct after Nancy's placement in foster care. I

3. The plaintiffs allege that their request for a continuance was communicated to the court by the minister who initially contacted CYS. Plaintiffs' Amended Complaint at ¶ 12. Assuming this to be true, Mr. Mason's failure to communicate plaintiffs' request seems irrelevant.

cannot find that these allegations are insufficient as a matter of law to sustain a substantive due process claim. The allegations are, admittedly, somewhat bare. They attribute motivations to Mr. Mason on the basis of his outward conduct, without describing explicit manifestations of malicious intent, such as statements of ill-will, which would confirm plaintiffs' suspicions. Nonetheless, on a motion to dismiss, the complaint is to be read generously. *See, e.g., Labov v. Lalley,* 809 F.2d 220 (3d Cir.1987). Plaintiffs allege behavior which, if accompanied by the intent attributed to Mr. Mason, constitutes a clear violation of plaintiffs' substantive due process rights.

Accordingly, it would be premature to hold that Mr. Mason may invoke qualified immunity as a bar to plaintiffs' claims regarding this conduct. If, on a motion for summary judgment, plaintiffs fail to produce evidence that Mr. Mason's actions were in fact the result of malice rather than "excess of zeal," then Mr. Mason would be entitled to qualified immunity at the time.

### Plaintiffs' Claims Against CYS

■ Plaintiffs allege that CYS maintains "an unofficial policy that parents suspected of child abuse may be denied custody and visitation with their child prior to a hearing to determine if the child has been abused in situations where there is no imminent danger to the child." Plaintiffs' Memo, at 15. The basis of this allegation is plaintiffs' communication with an unnamed individual "who had suffered similar injuries by Defendants." *Id.*

For the reasons identified above, these allegations are insufficient to sustain a substantive due process claim.

### Conclusion

Plaintiffs' claims against Mr. Mason based on his decision to initiate dependency proceedings on behalf of Nancy Fanning are barred by Mr. Mason's absolute immunity for actions within his prosecutorial role. Hence, plaintiffs' claims predicated on Mr. Mason's initiation of proceedings will be dismissed. Plaintiffs' allegations regarding Mr. Mason's failure to relay to the Court of Common Pleas the reason for plaintiffs' absence at the dependency proceedings are insufficient to state a procedural due process claim. Accordingly, claims based on such allegations will be dismissed. Plaintiffs' allegations regarding Mr. Mason's removal of Nancy from her parents' home prior to initiating proceedings, as well as plaintiffs' claim against CYS for sanctioning such conduct, are insufficient to sustain substantive due process claims. Accordingly, claims based on these allegations will also be dismissed. Finally, plaintiffs have minimally alleged malicious interference of clearly established constitutional rights with respect to Mr. Mason's conduct after Nancy was placed in foster care. Defendants' motion to dismiss will be denied as to these allegations.

These rulings are reflected in an accompanying Order.

### ORDER

Defendants' Motion to Dismiss is GRANTED with respect to plaintiffs' claims based on defendants' initiation of dependency proceedings, defendants' failure to relay to the Court of Common Pleas the reason for plaintiffs' absence at the dependency proceedings, and defendants' removal of Nancy Fanning from her parents' home prior to initiating proceedings. Defendants' Motion to Dismiss is DENIED with respect to plaintiffs' claims regarding Mr. Mason's conduct after Nancy was placed in foster care. Because all claims against Montgomery County Children and Youth Services ("CYS") are dismissed, defendants' Motion to Dismiss plaintiffs' punitive damage claims against CYS is DENIED as moot.