Sandra MILLER, Cory Miller, Thomas Miller, Dakota Bradley, and David L. Deratzian, Plaintiffs,

v.

CITY OF PHILADELPHIA, Philadelphia Dept. of Human Services, Owen Scheer, Children's Hospital of Philadelphia, Officer Hutton, and Sgt. Marc Carroll, Defendants.

Civil Action No. 96–3578.

United States District Court, E.D. Pennsylvania.

Jan. 29, 1997.

against these defendants under the summary judgment standard.

David L. Deratzian, Lieberman & Scott, P.C., Philadelphia, PA, for Sandra Miller, Cory Miller, Thomas Miller, Dakota Bradley.

David L. Deratzian, Lieberman & Scott, P.C., Philadelphia, PA, pro se.

Jeffrey M. Scott, Assistant City Solicitor, Philadelphia, PA, Marcia Berman, City of Philadelphia Law Dept., Philadelphia, PA, for City of Philadelphia.

Marcia Berman, City of Philadelphia Law Dept., Philadelphia, PA, for Philadelphia Dept. of Human Services, Owen Scheer.

Charles T. Roessing, White and Williams, Paoli, PA, for Children's Hosp. of Philadelphia, Officer Hutton, Sgt. Marc Carroll.

## MEMORANDUM

YOHN, District Judge.

Plaintiffs Sandra Miller, her children, and her attorney David L. Deratzian bring various federal and state claims against City of Philadelphia, Philadelphia Department of Human Services (DHS), social worker Owen Scheer, Children's Hospital of Philadelphia (CHOP), and hospital security officers Hudson[1] and Sgt. Marc Carroll. Plaintiffs' claims relate to DHS and Scheer's actions in obtaining custody of Miller's children through an *ex-parte* temporary child custody order. Miller regained custody of her children after a span of five days, which included a two day hearing that resulted in the dismissal of DHS's petition for adjudication of dependency. Plaintiffs contend that Scheer had no probable cause and used deceitful means to obtain the temporary custody order, and allege civil rights, conspiracy, malicious prosecution, bodily injury and intentional infliction of emotional distress claims. In addition, plaintiffs bring civil rights claims against the City and DHS independently based on their policy, custom and practice, and failure to adequately train their human services staff.

On July 26, 1996, defendants Scheer, City of Philadelphia and DHS moved to dismiss all claims against them. After a telephone conference with counsel, the court ordered plaintiffs to file an amended complaint. At the same time, the court dismissed defendants' motion without prejudice.

On October 16, 1996, plaintiffs filed an amended complaint, which differed little from the original complaint. On October 24, 1996, defendants CHOP, Hudson and Carroll renewed their previously filed motion to dismiss, or in the alternative, motion for summary judgment. The court denied the CHOP defendants' motion on November 21, 1996.

On October 25, 1996, defendants Scheer, City of Philadelphia, and DHS filed a new motion to dismiss. In response, plaintiffs indicated to the court that they wished to rely on their previously submitted memorandum. Defendants argue that plaintiffs have failed to allege a procedural due process claim, and that Scheer has immunity under federal and state law. Defendants further contend that City of Philadelphia and DHS cannot be liable under § 1983 in the absence of a conscious decision or deliberate indifference of some natural person because an abstract entity cannot be deemed to violate § 1983. Defendants argue that because Scheer is immune and plaintiffs have failed to name any official responsible for the alleged civil rights violations, plaintiffs' claims

1. Defendant Sheldon L. Hudson is incorrectly named in the complaint as "Officer Hutton."

against City of Philadelphia and DHS must be dismissed.

The court finds that plaintiffs' procedural due process allegation fails to state a claim for relief. The complaint concedes that defendants complied with the procedural requirements of Pennsylvania's Child Protective Services Law (CPSL), 23 Pa. Cons.Stat. Ann. § 6301 *et seq* (1991), and the Juvenile Court Act (Juvenile Act), 42 Pa. Cons.Stat. Ann. § 6301 *et seq* (1982), and this court concludes that Pennsylvania procedure provides constitutionally adequate process. In contrast, plaintiffs' do state § 1983 claims against City of Philadelphia and Scheer. Scheer has neither absolute nor qualified immunity for his alleged conduct in seeking and obtaining temporary custody, although Scheer does have absolute immunity against claims relating to his testimony at the adjudication of dependency hearing. Similarly, Scheer is not entitled to immunity under state law for his alleged conduct. Further, regardless of Scheer's liability, plaintiffs state claims against City of Philadelphia and DHS because a municipality can be independently liable for the acts of its policymakers.

## I. STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true and view in a light most favorable to the plaintiff all allegations made in the complaint. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 249, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). A motion to dismiss will only be granted if it is clear that relief cannot be granted to the plaintiff under any set of facts that could be proven consistent with the complaint's allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

## II. SUMMARY OF THE COMPLAINT

The complaint makes the following allegations which the court must accept as true for this purpose.

On May 18, 1994, Miller brought her three children, Cory, Thomas, and Dakota for physical examinations to the Children's Hospital of Pennsylvania (CHOP), as requested by Scheer, a DHS social worker. Scheer made the request in connection with allegations of abuse regarding the younger child, Cory. Miller's attorney, David Deratzian, accompanied Miller to the hospital.

At the hospital, Scheer met with an unidentified CHOP social worker. Deratzian was excluded from the meeting, at which Scheer told the CHOP social worker "what he was looking for."

Dr. Henretig, the attending physician, specifically gave Deratzian permission to be present at the examination to prevent DHS social workers from making improper suggestions. Deratzian waited in an adjacent hall with Scheer and Reggie Jackson, a colleague of Scheer's. After fifteen minutes, Scheer attempted, but failed, to have a hospital security guard exclude Deratzian from the area.

Dr. Henretig had no initial findings as to the two older children, but decided to order x-rays of all three children because of a suspicious bruise he found on Cory's back. The x-rays revealed nothing. Henretig reported that his findings were negative as to Thomas and Dakota and that he could not indicate abuse as the cause of the bruise on Cory's back.

After hearing Henretig's report, Scheer told Miller and Deratzian that he was going to call City Solicitor Deborah Mazer to get permission for Miller to leave with her children. This he did not do. Instead, Scheer asked Mazer to petition the Honorable Albert Sheppard of the Philadelphia Court of Common Pleas for an order to remove the children from Miller's custody. Scheer misrepresented to Mazer the nature of Dr. Henretig's report, and failed to inform her that counsel for Miller was nearby. Deratzian requested access to the telephone conversation, and was refused access by a security guard. After one hour, Deratzian was informed by Mazer that Judge Sheppard had granted a restraining order.

On hearing the news, Miller became distraught; meanwhile, security guards physically restrained and then battered Deratzian,

before throwing him out the emergency doors.

A dependency hearing was held on Friday May 20 and Monday 23, 1994, after which the three children were returned to Miller. During the intervening weekend, Scheer ordered the Children Shelter to deprive Miller of access to her progeny, despite a court order to the contrary. Plaintiffs allege that defendants maintained the cause of action wholly without merit or probable cause. Plaintiffs aver that Scheer attempted to suborn Dr. Henretig to commit perjury, induced CHOP to falsify records, and submitted perjurious testimony at the dependency hearing.

Subsequent hearings on DHS's petition for adjudication of dependency were held, at which DHS dismissed the petition, reinstated it, and finally dismissed it.

## III. DISCUSSION

### A. Procedural Due Process Claim

 Plaintiffs concede that defendants complied with Pennsylvania procedures for taking a child into custody and, similarly, do not challenge the constitutionality of the procedure insofar as the usual case where parents are not physically present when an application for a CPSL restraining order is made. However, plaintiffs contend that the process is constitutionally infirm when applied to the present facts where Miller and her counsel were present with Scheer when he applied for the restraining order.[2] Plaintiffs argue that in deciding what process is due, courts must weigh the incremental value of additional procedure against its cost. In most child custody cases, *ex parte* judicial proceedings satisfy due process because the government has a strong interest in protecting children from immediate abuse, and pre-deprivation process would insufficiently protect that interest. *See Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979). Plaintiffs contend, however, that when the child's parent or her attorney are present at the time the government applies for a restraining order, inclusion of the par-

ent· or her attorney in the procedure would not cause delay ·or additionally burden the governmental interest.

 To state a due process claim, plaintiffs must allege that they were deprived of a protected liberty or property interest without the benefits of constitutionally required procedure. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In determining the amount of process that a state must give, courts are guided by three factors: (1) the private interest affected by the initial action; (2) the risk of an erroneous deprivation of such interest through the procedures used; and (3) the probable value of additional safeguards. *Id.* at 333, 96 S.Ct. at 901–02. There is no dispute that familial privacy is a protected liberty interest. *See Hodge v. Jones,* 31 F.3d 157, 167 (4th Cir.), cert. denied, 513 U.S. 1018, 115 S.Ct.· 581, 130 L.Ed.2d 496 (1994). That right, however, is not absolute and must be balanced against the state's interest in protecting children suspected of being abused. *See Millspaugh v. County Department of Public Welfare of Wabash County,* 937 F.2d 1172, 1157–77 (7th Cir.), cert. denied, 502 U.S. 1004, 112 S.Ct. 638, 116 L.Ed.2d 656 (1991).

 The initiation of child custody proceedings by ex parte order provides constitutionally adequate procedural due process, so long as the state provides a prompt post-deprivation hearing. *See e.g., Jordan v. Jackson,* 15 F.3d 333, 343 (4th Cir.1994); *Doe v. Hennepin County,* 858 F.2d 1325, 1329 (8th Cir.1988), cert denied, 490 U.S. 1108, 109 S.Ct. 3161, 104 L.Ed.2d 1023 (1989); *Fitzgerald v. Williamson,* 787 F.2d 403, 408 (8th Cir.1986). Specifically, Pennsylvania's CPSL procedures, granting a hearing within seventy-two hours of a child's removal from her family, provide constitutionally adequate process. *Callahan v. Lancaster–Lebanon Intermediate Unit 13,* 880 F.Supp. 319, 333 (E.D.Pa.1994); *Fanning v. Montgomery County Children & Youth Services,* 702 F.Supp. 1184, 1189 (E.D.Pa.1988); *Roman v. Appleby,* 558 F.Supp. 449, 460–61 (E.D.Pa.1983).

---

**2.** Plaintiffs state that they are not challenging the constitutionality of the CPSL, which merely provides that a post deprivation hearing be held

within 72 hours. Rather, plaintiffs state that they are challenging the procedures adopted by DHS to implement the CPSL.

**1062**

Plaintiffs claim that the procedure as applied here was defective and cannot be sustained. "The interpretation and application of the Due Process clause are intensely practical matters" *Goss v. Lopez*, 419 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). It would be impractical to require the government to adopt special procedures depending on who was within the vicinity of the government official when he or she requests an emergency restraining order. Plaintiffs' proposed procedure would require case-by-case analysis, and would raise new issues such as the nature of the pre-deprivation hearing that the state would have to provide and when exactly a parent was available on site. Pre-deprivation hearings would frustrate the purpose of the Juvenile Act and would bog down the statute with "procedural technicalities and costly litigation." *Roman*, 558 F.Supp. at 461. Consequently, although it may be preferable for DHS to allow the parent to participate in the request for an emergency order when he or she is present, the facts as alleged by plaintiffs do not establish a constitutional violation of the right to procedural due process.

**B.** *Scheer's Claim of Immunity Under 42 U.S.C. § 1983*

Defendants argue that plaintiffs fail to state a claim against Scheer under 42 U.S.C. § 1983 because Scheer has absolute and qualified immunity. Defendants posit that state officials acting in prosecutorial roles are absolutely immune under § 1983. Defendants further claim that Scheer has qualified immunity under § 1983 because he did not violate a clearly established constitutional right held by plaintiffs.

*i. Absolute Immunity*

Under § 1983, the Supreme Court has recognized the defense of absolute immunity for prosecutorial duties that are "intimately associated with the judicial process," such as initiating and pursuing a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). However, the same immunity does not apply to prosecutor's actions that are administrative and investigative. *Har-*

*low v. Fitzgerald*, 457 U.S. 800, 811 n. 16, 102 S.Ct. 2727, 2734 n. 16, 73 L.Ed.2d 396 (1982). Similarly, officials that initiate and prosecute agency enforcement measures subject to agency adjudication are entitled to absolute immunity. *Butz v. Economou*, 438 U.S. 478, 508, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978). It is the official's function, not role or status, that determines whether absolute immunity applies. *Id.* at 511–13, 98 S.Ct. at 2913–14.

The Third Circuit has not addressed the issue of absolute immunity for child welfare workers. Other circuits have reached different conclusions on whether a social worker who initiates a child custody proceedings is fulfilling a prosecutorial or investigative function. *Compare Millspaugh*, 937 F.2d at 1176 and *Vosburg v. Department of Social Servs.*, 884 F.2d 133 (4th Cir.1989) (granting absolute immunity to social workers in connection with their filing of a child removal petition) and *Meyers v. Contra Costa County Dept. of Social Services*, 812 F.2d 1154, 1157 (9th Cir.) (social worker function in determining when to bring dependency proceedings is similar to responsibility of a criminal prosecutor), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987) and *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984) with *Snell v. Tunnell*, 920 F.2d 673, 689 (10th Cir.1990) (holding that filing of a verified complaint was similar to a policeman filing an arrest warrant and did not initiate judicial process), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991) and *Austin v. Borel*, 830 F.2d 1356 (5th Cir.1987) (holding that social worker was not entitled to absolute immunity for filing complaint because judicial proceedings were initiated by district attorney, who filed petition for adjudication). In 1994, the Supreme Court denied a petition for writ of certiorari arising from a Sixth Circuit case that held that a social worker was absolutely immune from liability for obtaining an *ex-parte* order suspending the plaintiff's visitation rights with his daughter. *Hoffman v. Harris*, 511 U.S. 1060, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994) (Thomas, J. and Scalia, J., dissenting to denial of cert.).

■ Those courts that have granted absolute immunity hold that social workers are the functional equivalent of criminal prosecutors in initiating child custody proceedings. The test for absolute immunity is whether but for a judges's acts there would be no injury, and any prosecutors or witnesses who induce the judge to act are immune. *Millspaugh*, 937 F.2d at 1175. In *Fanning,* Judge Pollak ruled that social workers were immune from suit for initiating dependency hearings because their role was sufficiently analogous to that of prosecutors in initiating criminal proceedings. 702 F.Supp. at 1187. The court reasoned that allowing suits against social workers would impose an unacceptable burden because the broad social interest in protecting abused children would be compromised if social workers had to execute their duties with a constant eye to the possibility of incurring civil liabilities for their conduct. *Id.* at 1187. *Contra Rinderer v. Delaware County Children & Youth Services,* 703 F.Supp. 358 (E.D.Pa.1987).

■ Those courts that have not granted immunity for social workers analogize the filing of a complaint by a social worker to the seeking of an arrest warrant by a police officer, who is granted only qualified immunity under § 1983. *Snell,* 920 F.2d at 689. Further, in assessing the extent of immunities under § 1983, courts must be guided by common law traditions and not make freewheeling policy choices. *Austin,* 830 F.2d at 1361 (citing *Malley v. Briggs,* 475 U.S. 335, 342, 106 S.Ct. 1092, 1096–97, 89 L.Ed.2d 271 (1986) ). *See also Hoffman v. Harris,* 511 U.S. 1060, 1063, 114 S.Ct. 1631, 1633, 128 L.Ed.2d 354 (1994) (Thomas, J., dissenting to denial of certiorari) (stating that social workers do not function as prosecutors for purposes of immunity, and that federal courts do not have a license to establish immunity in interest of public policy).

The court holds that Scheer is not entitled to absolute immunity because his alleged tortious conduct, as stated in the complaint, took place during the investigative phrase of the child custody proceeding. Plaintiffs allege that Scheer contacted "Assistant City Solicitor Deborah Mazer for the purpose of having her obtain a custody order to remove the children from Ms. Miller's custody." (Amend. Complaint at 29.) Although not completely clear from the complaint, and neither party has cited to Pennsylvania procedure on the matter, it appears that plaintiffs allege that Scheer investigated the matter and reported his conclusions and recommendations to Mazer, who then pursued the prosecution by contacting Judge Sheppard. Consequently, Scheer's actions were investigative and not subject to absolute immunity.

### ii. Qualified Immunity

■ Defendants argue that even if Scheer was not absolutely immune, Scheer has qualified immunity. Government officials performing discretionary, non-prosecutorial functions are shielded from liability insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738. "[W]hether an official protected by qualified immunity may be personally liable for an alleged unlawful action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established at the time it was taken.' " *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). The extent of the right must be sufficiently obvious that a reasonable official would understand that his actions violate the law. *Anderson,* 483 U.S. at 635, 107 S.Ct. at 3034. "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in defendants' position at the relevant time could have believed, in light of what was decided in case law, that their conduct would be unlawful." *Good v. Dauphin County Social Services,* 891 F.2d 1087, 1092 (3d Cir.1989). Officials are entitled to qualified immunity if they could have believed their acts were legal, even if officials of reasonable competence could disagree. *Callahan v. Lancaster–Lebanon Intermediate Unit 13,* 880 F.Supp. 319, 327 (E.D.Pa.1994). Consequently, qualified immunity protects "all but the plainly incompetent and those who knowingly violate the law." *Malley v.*

*Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

Defendants argue that the rights asserted by plaintiffs—a substantive due process claim based on familial integrity and a malicious prosecution claim—are not clearly established constitutional rights.

*Substantive Due Process*

■ Plaintiffs allege that Scheer is not entitled to immunity because he instigated and pursued child abuse proceedings without probable cause for suspecting abuse. Defendants claim that Scheer's is entitled to immunity because Scheer did not violate clearly established substantive due process rights held by plaintiffs.

■ The Supreme Court has recognized that parents have a constitutionally protected liberty interest in the care and supervision of their children. *Lehr v. Robertson,* 463 U.S. 248, 258, 103 S.Ct. 2985, 2991–92, 77 L.Ed.2d 614 (1983). However, that interest is not absolute and unqualified. *Id.* at 256, 103 S.Ct. at 2990–91. That interest must be balanced against the government's interest in the health, education, and welfare of children as citizens. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972).

Recently, the Third Circuit has held that to establish a due process violation, and overcome qualified immunity, regarding a claim of government interference with familial relations, a plaintiff must establish that a child welfare worker, in removing a child from parental custody, possessed no objectively reasonable basis for believing that parental custody threatened the child's welfare or safety. *Croft v. Westmoreland County Children and Youth Services,* 103 F.3d 1123 (3d Cir.1997). *See also Gottlieb v. County of Orange,* 84 F.3d 511, 517 (2d Cir.1996) (finding no due process violation where child welfare worker had objectively reasonable basis

for believing parent represented threat to child's welfare); *Thomason v. SCAN Volunteer Services, Inc.,* 85 F.3d 1365, 1371 (8th Cir.1996) (holding child welfare worker entitled to qualified immunity where child removed on reasonable suspicion of abuse). The *Croft* decision, however, was decided subsequent to the events alleged here. Further, in deciding *Croft,* the Third Circuit appears to break new ground rather than rely on firmly established constitutional principles; the *Croft* court cites to no cases decided prior to 1996 that announced the same specific standard.[3] Consequently, the *Croft* decision is not determinative of whether Scheer knowingly violated clearly defined existing law in depriving Miller of the custody of her children without, allegedly, an objectively reasonable basis for suspecting abuse. Rather, the court must look to case law as it existed in September 1995 in deciding whether Scheer's alleged conduct violated clearly established rights. *Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985) (holding state of the law must be determined at time of challenged action).

Prior to *Croft,* there were no clearly established legal norms regarding the degree of suspicion a child welfare worker must possess before initiating custody proceedings. *Callahan,* 880 F.Supp. at 332 (conducting thorough review of all-circuit case law). *See also Doe v. State of Louisiana,* 2 F.3d 1412, 1417 (5th Cir.1993) (case worker and supervisor entitled to qualified immunity because law not clearly established with respect to claim that case worker manipulated children to state false allegations of abuse), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Frazier v. Bailey,* 957 F.2d 920, 929 (1st Cir.1992) (holding that plaintiff failed to prove that child care worker's alleged conduct in programming children to accuse parent of abuse violated amorphous right of family integrity); *Hodorowski v.*

---

**3.** For the principle that a state has no interest in protecting children from their parents absent reasonable and articulable evidence giving rise to a suspicion of child abuse, the *Croft* court cites to *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). *Lehr* involved a claim by an unwed father that New York state had violated his substantive due process rights when the

state failed to notify him of pending adoption proceedings. The Supreme Court held that an unwed father's personal contacts with his child are entitled to substantial protection under the due process clause when the father has participated in rearing the child. *Id.* at 261, 103 S.Ct. at 2993.

*Ray,* 844 F.2d 1210, 1217 (5th Cir.1988) (holding right to family integrity is nebulous in nature and not sufficiently particularized for government officials to know that their conduct in removing children from parent's custody without court order violated parent's substantive rights); *Myers v. Morris,* 810 F.2d 1437, 1461 (8th Cir.)(holding standards for interviewing children that had allegedly been sexually abused not clearly established and defendants were entitled to qualified immunity), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).

Consequently, plaintiffs fail to state a claim against Scheer with respect to their allegation that Scheer had no probable cause to initiate child custody proceedings because Scheer did not violate a clearly established substantive due process right held by plaintiffs.

■ However, plaintiffs also allege that Scheer misrepresented Dr. Henretig's medical report, induced CHOP to falsify records and attempted to suborn perjury. These allegations when applied to taking children from their parents would by anyone's definition be patently unlawful and a clearly established substantive due process violation. Consequently, plaintiffs have alleged conduct that is not deserving of qualified immunity and defendants' motion to dismiss is denied with respect to these claims. *See Fanning,* 702 F.Supp. at 1190 (holding that plaintiff must allege conduct so arbitrary and unreasonable that it shocks the conscience in order to state substantive due process claim in context of social worker's alleged interference with parent's custody rights).

*Malicious Prosecution*

■ Plaintiffs assert the constitutional tort of malicious prosecution under § 1983. A claim for malicious prosecution is actionable under § 1983, and incorporates the elements of the common law tort, which include actual malice. *Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir.1996); *Lee v. Mihalich,* 847 F.2d 66, 70 (3d Cir.1988). A government official will be denied qualified immunity on a malicious prosecution claim if in light of the existing law, it was apparent to the official

that the charges were unlawful. *Lee,* 847 F.2d at 72.

However, considerable doubt exists as to whether at the time of the incidents alleged here, it was clearly established that malicious prosecution constituted a constitutional violation under § 1983. In January, 1994, the Supreme court held that a malicious prosecution claim could not be pursued as a Fourteenth Amendment due process claim. *Albright v. Oliver,* 510 U.S. 266, 269-71, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). In *Albright,* the petitioner claimed his substantive due process rights were violated when a police officer initiated a criminal prosecution without probable cause. The Supreme Court, by a vote of seven to two, affirmed the appeals court's conclusion that the petitioner failed to state a valid claim. The Court held that an arrest without probable cause does not constitute a violation of substantive due process rights. *Id.* at 273-77, 114 S.Ct. at 813-14. The Justices, however, could not agree on a rationale. A plurality opinion by Justice Rehnquist and joined by three other Justices mentioned the Fourth Amendment as a potential source for a malicious prosecution claim but, because the petitioner had not pleaded claims under the Fourth Amendment, the plurality declined to state whether such a claim would succeed. *Id.* at 273-75, 114 S.Ct. at 813. However, the plurality stated that an accused is not entitled to "judicial oversight or review of the decision to prosecute." *Id.* Only two dissenters stated the view that a malicious prosecution suit could be advanced under § 1983. *Id.*

Prior to *Albright,* the Third Circuit had the "most expansive approach" to the viability of malicious prosecution claims under § 1983. *Id.* at 270 n. 4, 114 S.Ct. at 811 n. 4. In July, 1996, the Third Circuit, without discussing or citing *Albright,* restated its analysis for malicious prosecution claims as it existed prior to *Albright. Hilfirty v. Shipman,* 91 F.3d 573 (3d Cir.1996).

Prior to the *Hilfirty* decision, the Supreme Court's *Albright* opinion created uncertainty, and United States District Courts in Pennsylvania reached differing conclusions, as to whether a malicious prosecution claim was actionable under § 1983. In *Brison v. Test-*

*er,* No. 94–2256 (E.D.Pa. April 10, 1996), the court held that without clear direction from the Third Circuit, the *Albright* decision provided insufficient guidance for the court to conclude that a § 1983 malicious prosecution claim no longer existed. *See also Haddock v. Christos,* 866 F.Supp. 170, 173 n. 9 (M.D.Pa. 1994) (presuming that elements identified by Third Circuit in *Lee* for malicious prosecution claim survived *Albright* ); *Ferraira v. Mobil Oil Corp.,* 1994 WL 470280 at *3–4 (E.D.Pa. Aug. 19, 1994) (same), *aff'd,* 68 F.3d 456 (3d Cir.1995). *But see Pansy v. Preate,* 870 F.Supp. 612, 622 (M.D.Pa.1994) (granting summary judgment on malicious prosecution claim on *Albright* grounds and because of existence of probable cause), *aff'd,* 61 F.3d 896 (3d Cir.1995); *Patterson v. Board of Probation and Parole,* 851 F.Supp. 194, 201 (E.D.Pa.1994) (holding that no § 1983 malicious prosecution claims exist after Albright); *Smith v. Holtz,* 856 F.Supp. 227, 236 (M.D.Pa.1994) (stating that existence of § 1983 malicious prosecution claim was unresolved issue), *aff'd,* 87 F.3d 108 (3d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996). In *Brooks v. Carrion,* 1996 WL 563897 *3 (E.D.Pa. Sept 26, 1996), a post-*Hilfirty* decision, the court held that between January, 1994 and July, 1996, malicious prosecution was not clearly established as a constitutional violation and, consequently, state officials have qualified immunity for claims arising out of incidents occurring during that period.

This court holds that without clear direction from the Third Circuit concerning the impact of *Albright,* malicious prosecution remains a valid claim under § 1983. Further, in light of the Third Circuit's explicit holding in *Lee,* the implications of *Albright* are not apparent enough for this court to conclude that malicious prosecution was not a clearly established constitutional violation under § 1983 during the eighteen months prior to *Hilfirty.*

Therefore, plaintiffs state a § 1983 claim for malicious prosecution if they allege the elements of the common law tort.

### C. *Scheer's State Immunity*

■■■ Section 6318 of the CPSL grants social workers a good faith immunity from civil liability under state law. 23 Pa. Cons.Stat. Ann. § 6318 (Supp.1996). Scheer's good faith must be judged on an objective standard. *Brozovich v. Circle C Group Homes, Inc.,* 120 Pa.Cmwlth. 417, 548 A.2d 698 (1988). To overcome immunity, plaintiffs must allege facts that display Scheer's bad faith. Allegations of bad faith that use general language with regard to motive and malice are insufficient to overcome the statutory presumption of good faith. *Heinrich v. Conemaugh Valley Mem. Hosp.,* 436 Pa.Super. 465, 648 A.2d 53, 58 (1994).

■■■ Here, Scheer is not entitled to good faith immunity under § 6318 because plaintiffs state sufficient allegations that Scheer acted in bad faith. Plaintiffs allege that Scheer attempted to suborn perjury, induced CHOP to falsify records and misrepresented Dr. Henretig's medical report to Judge Sheppard.

### D. *Civil Conspiracy*

Plaintiffs concede that they do not have a claim under 42 U.S.C. § 1985. (Plain. Memo. at 18.) Instead, plaintiffs bring a civil conspiracy claim under state law. Defendants' motion to dismiss is denied with respect to this claim and plaintiffs' other state law claims because as stated above, plaintiffs have stated sufficient allegations of bad faith to overcome Scheer's good faith immunity defense.

### E. *Liability of City and DHS*

■■■ Plaintiffs aver that the City and the DHS violated their constitutional rights through a policy, custom, and practice whereby social workers can subject persons like Miller to judicial process and accusations of child abuse without basis for doing so. (Amended Complaint at 53.) Further, plaintiffs allege that the City and DHS failed to adequately discipline and train their staff in the correct way to handle child abuse cases. (Amended Complaint at 63.)

■■■ Local governments may be held liable for constitutional violations caused by official custom and policy. *Monell v. Depart-*

*ment of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). A municipality cannot be liable for the failure to supervise or train an officer when there is no underlying constitutional violation by the officer. *City of Los Angeles v. Heller,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). However, actions of city policymakers, rather than those of the individual officer whose behavior directly impacted the plaintiffs, can be the predicate for § 1983 claims against a municipality. *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1063 (3d Cir. 1991) (holding city policymakers, rather than turnkey, were the city actors whose primary liability must be shown to establish § 1983 claim arising from prisoner suicide), *cert. denied,* 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992).

Here, plaintiffs have alleged a cause of action against City of Philadelphia and DHS premised on Scheer's conduct in obtaining temporary custody of Miller's children.

Defendants argue that plaintiffs fail to state a claim against DHS and City of Philadelphia regarding their policy and custom for investigating child abuse allegations because plaintiffs fail to identify any persons, groups of persons or official offices that are responsible for the alleged unconstitutional policy. *Simmons,* 947 F.2d at 1062; *Wendy H. v. City of Philadelphia,* 849 F.Supp. 367, 376–77 (E.D.Pa.1994) (holding that plaintiffs "must identify officials with ultimate policymaking authority in the area in question and adduce scienter-like evidence ... with respect to them"). This defense is premature at this stage of the proceedings because it is perfectly permissible for the plaintiffs to name the appropriate city officials at a later stage of the litigation after discovery has been completed.

Therefore, defendants' motion to dismiss plaintiffs' § 1983 claim against the City and DHS is denied.

## IV. CONCLUSION

Defendants' motion to dismiss is granted with respect to plaintiffs' procedural due process claim. With respect to plaintiffs' additional claims, defendants' motion is denied.

Finally, the court orders plaintiffs to file a statement of claim. The court previously directed plaintiffs to file an amended complaint that more clearly articulated the specific claims alleged against each defendant. Plaintiffs' amended complaint was little changed from its predecessor, it provided defendants with no additional details of the specific statutory or constitutional violations alleged, and the court sympathizes with defendants' difficulties in responding to plaintiffs' complaint. Considerable time for discovery has now elapsed and plaintiffs should be able to articulate their claims with more specificity. Therefore, plaintiffs are ordered to file a statement of claim within 14 days of the date hereof setting forth the specific claims against each defendant, the specific statute or constitutional provision on which each claim is based, and a short summary of the specific facts underlying each claim as they relate to each defendant. The plaintiffs are urged to list only those claims which they feel will be submitted to the jury so as to not waste valuable legal and judicial resources dealing with claims that will ultimately be discarded by the plaintiffs as redundant or superfluous. No claims not so listed will be submitted to the jury.

An appropriate order follows.

### ORDER

**AND NOW, THIS 29 DAY OF** January, 1997, upon consideration of defendants City of Philadelphia, Philadelphia Department of Human Services, and Owen Scheer's motion to dismiss, and the response thereto, **IT IS ORDERED** that defendants' motion is **GRANTED IN PART AND DENIED IN PART.** Specifically,

(1) defendants' motion with respect to plaintiffs' procedural due process claim is **GRANTED;**

(2) defendants' motion with respect to plaintiffs' remaining claims is **DENIED.**

(3) Further, plaintiffs are ordered to file a statement of claim within 14 days of the date hereof setting forth the specific claims against each defendant, the specific statute or constitutional provision on which each claim is based, and a short summary of the

specific facts underlying each claim as they relate to each defendant.